Salvatore **BERTINO**, Plaintiff-Respondent,

v.

**POLISH OCEAN LINE**, Third-Party Plaintiff and Defendant-Appellant,

v.

**AMERICAN STEVEDORES, INC.**, Third-Party Defendant-Respondent.

No. 52, Docket 32192.

United States Court of Appeals Second Circuit.

Argued Sept. 17, 1968.

Decided Oct. 29, 1968.

* Of the First Circuit sitting by designation.

Paul S. Edelman, Martin A. Fromer, Kreindler & Kreindler, New York City, for third-party plaintiff and defendant-appellant.

Jack H. Dorfman, Fodera & Galardi, Brooklyn, N.Y., for plaintiff-respondent.

John F. X. McKiernan, Daniel J. Coughlin, New York City, for third-party defendant-respondent.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

Polish Ocean Line (the Line) appeals from two judgments of the District Court for the Southern District of New York, both entered upon findings by the court without a jury. The first held that the Line was liable to plaintiff, Salvatore Bertino, for injuries suffered by him while working as a longshoreman on the Line's ship, the M/S OLESNICA. The second dismissed the Line's claim for indemnity from the third-party defendant, American Stevedores, Incorporated (American), holding that American was not liable to the Line under an implied warranty of workmanlike performance. The Line had previously impleaded American, seeking recovery over if it should be found liable to Bertino.

The evidence shows that Bertino arrived on board the M/S OLESNICA at approximately 8:00 a.m. on March 3, 1961, to unload cargo from the No. 2 hatch. He assisted in the removal of the night tent and in placing skids over the port side of the ship. In the course of walking on the deck of the ship, he passed in the vicinity of a loading winch, slipped on sawdust covering oil or grease and fell, injuring his shoulder and his knee. There was no direct testimony as to the origin of the oil or grease on the deck. Bertino testified that he had seen a member of the crew (the Line's employee), ten to fifteen minutes before his accident, spreading sawdust near the hatch where he eventually fell. Although there was testimony that this is the usual method for absorbing oil on a deck, Bertino stated that he did not see the oil covered by the sawdust until after he had fallen. The other members of Bertino's stevedoring gang likewise testified that they had not seen the oil before Bertino's fall.

## BERTINO'S SUIT AGAINST POLISH OCEAN LINE

The trial court found that the crewman who had spread the sawdust over the oil had made the situation more dangerous by creating a deceptively safe condition, resulting in a "trap" and an unseaworthy condition. The act of covering the oil with sawdust cannot be denominated a "trap," giving the word its ordinary connotation, but there was sufficient evidence to support the lower court's determination that the oil on the deck itself created an unsafe condition which rendered the ship unseaworthy and subjected the shipowner to liability for injuries resulting from the defect.

While it is true, as the Line contends, that the court could have reasonably found that the plaintiff's injuries were at least partially caused by his own contributory negligence, a finding that injury was caused solely because of the unseaworthy condition or the Line's negligence is not clearly erroneous.

## THE LINE'S CLAIM OVER AGAINST AMERICAN

There was neither a written contract nor an express indemnity agreement between the Line and American, but the Line rests its claim for indemnity on the implied warranty of workmanlike performance by American. The Line contends that it is entitled to indemnification on either of two theories; the first, that American caused the dangerous condition because its own employee operated the winch from which the oil presumably originated and, the second, that even if it were not directly responsible for the creation of the oil spot, American was chargeable with constructive notice of the danger and had a duty to rectify it, which it failed to do.

In respect to the Line's first contention, the oil was either spilled by one of the ship's oilers in the process of lubricating the winch gears and/or the oil leaked from the oil seals in the winch on the morning of March 3, 1961, before it was operated by the stevedores. There is

evidence to support one or both of these two theories, because on the morning of the accident a crew member spread sawdust before the winch began to be used to unload. In either situation it was the electrician (the Line's employee) who had the exclusive responsibility for oiling and maintaining the winch. Members of the stevedoring gang merely operated it, but had nothing to do with its upkeep.

■■ The Line's second contention is that American breached its implied warranty by failing to correct the defect, even assuming it was not directly responsible for the creation of the oil spot in the first instance. Whether a hazard is created by the negligence of the shipowner or otherwise the stevedore firm is liable if a workmanlike performance would have eliminated the risk of injury. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); DeGioia v. United States Lines, 304 F.2d 421, 424 (2d Cir. 1962). A breach of the warranty becomes the basis for the shipowner's right to indemnification against a stevedore company. The implied warranty of workmanlike performance requires stevedores to remove defects and dangerous conditions on vessels on which they are employed and generally to see that the longshoremen work under reasonably safe conditions. Misurella v. Isthmian Lines, Inc., 215 F.Supp. 857, 861–862 (S.D.N.Y.1963). Even if the danger was created by the shipowner, indemnity over is permitted if the condition was obvious and the stevedore gang continued to work or did not correct it. DeGioia, supra. The question remains, however, whether it can be said that American had constructive notice of the condition or that the condition was obvious, which would have put it under a duty to act.

■ Knowledge of the existence of a dangerous condition by a member of a stevedoring gang is imputed to its firm, and the firm's subsequent failure to act is a breach of the warranty. Drago v. A/S Inger, 305 F.2d 139 (2d Cir. 1962). However, all the members of the gang testified that they were not aware of the oil spot until Bertino fell. Bertino himself said that he did not see the oil until after he had slipped, despite his previous admission that he had seen a crew member spreading sawdust ten to fifteen minutes earlier. Even if the inference that Bertino knew of the oil can be drawn from his knowledge that "sawdust means spilled oil" and that knowledge be imputed to American, it would also be necessary to impute to American Bertino's belief that the situation was now safe, thus eliminating American's duty to correct the defect.

■ The ultimate function of the doctrine of unseaworthiness and the corollary right of the shipowner to indemnification from the stevedore firm is to allocate losses caused by shipboard injuries to those who are best situated to minimize, if not eliminate, the particular risk involved. DeGioia, supra, 304 F.2d at page 426. Here the maintenance and oiling of the winch were exclusively within the province and control of the Line's employee—that is, the electrician. It was also the Line's employee who knew of, and who sought to correct, the danger by spreading sawdust over the oil spot. On balance, we conclude that American did not breach its warranty to perform in a workmanlike manner and that the trial court correctly found that no basis existed justifying indemnity over against the stevedore firm.

The judgments below holding the shipowner liable for the injuries to Bertino and dismissing the claim over against American are affirmed.