William **HURDICH**, Plaintiff,

v.

EASTMOUNT SHIPPING CORP., Defendant and Third Party Plaintiff, Appellant-Cross Appellee,

v.

R.C.A. CORPORATION, Third Party Defendant Appellee-Cross Appellant.

Nos. 907, 1037, Dockets 73–2727, 74–1088.

United States Court of Appeals, Second Circuit.

Argued April 30, 1974.

Decided, Sept. 12, 1974.

Thomas H. Healey, Darby, Healey, Stonebridge & Whelan, New York City, for Eastmount.

John F. X. McKiernan, Hill, Betts & Nash, New York City, for R.C.A.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

WATERMAN, Circuit Judge:

These are cross-appeals from a judgment of the United States District Court for the Southern District of New York, Lasker, *J.*, entered in a third-party action which developed out of a fact pattern frequently recurring in the field of maritime law. In the principal action the seaman plaintiff William Hurdich sued his shipowner employer, Eastmount Shipping Corporation (Eastmount) for personal injuries sustained by him because of the alleged negligence of Eastmount and the unseaworthiness of its vessel on which Hurdich was employed when injured. Eastmount, after answering and controverting Hurdich's allegations of negligence and unseaworthiness, then filed its third-party complaint against RCA Corporation (RCA) which had performed certain repair work on the vessel on which Hurdich was injured. By this impleader Eastmount, claiming a breach of RCA's implied warranty of workmanlike service, asserted that Hurdich's injuries, if any, had been caused by the negligence of RCA. Accordingly, in the event that Eastmount should be adjudged liable to Hurdich, the vessel owner sought full indemnity from RCA. After a trial by jury in the principal action, a judgment of $75,000 was awarded in Hurdich's favor against Eastmount. No appeal has been taken from that judgment. The third-party action was then tried separately by the district court sitting without a jury. The court found that RCA had indeed breached its implied warranty of work-

manlike service. Despite this breach, the court nevertheless believed that Eastmount was not entitled to a full recovery over against RCA. Instead, finding that their combined negligence had produced Hurdich's injuries, and thereby concluding that Eastmount and RCA were joint tortfeasors, the court held that Eastmount was entitled to contribution from RCA of $37,500, one-half the amount for which Eastmount had been held liable to Hurdich. It is from this judgment that these cross-appeals by Eastmount and RCA arise.

Eastmount protests that under Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and its progeny, Eastmount was entitled to full recovery over, i. e., indemnity, on its claim of breach of implied warranty of workmanlike service, and that it was impermissible under prevailing maritime law for the district court to dispose of the case by regarding Eastmount and RCA as joint tortfeasors with Eastmount entitled to contribution only, instead of to its implied contractual indemnity. RCA presents a bifurcated argument on appeal. It primarily argues that Eastmount is entitled to neither indemnity nor contribution because Eastmount's conduct, which we shall discuss below, precludes both. However, RCA urges alternatively an affirmance of the district court's decision to allow contribution and to disallow indemnity.

Although, as mentioned, the district court "conclude[d] that RCA is liable to Eastmount for breach of its warranty of workmanlike service[,]" the court's award of only one-half of what Eastmount sought from RCA demonstrates that the breach of the warranty was not, in fact, the basis upon which Eastmount was allowed to recover against RCA. If it had been, then Eastmount should have been entitled to indemnity, that is, a full recovery over. Rather, despite some misleading language in the district court's opinion, a careful examination of that opinion reveals that the only basis on which Eastmount could properly have been allowed to recover against RCA was on a theory of contribution since Eastmount was precluded by its own conduct from obtaining a recovery under an implied warranty.[1] Thus construing the district court decision as one disallowing an indemnity but ordering a contribution between joint tortfeasors, we affirm the judgment below.

The facts are not complex. Eastmount, through an intermediary, retained RCA to replace an antenna insulator on one of Eastmount's vessels, the Susquehanna. The repairs were performed in Mobile, Alabama on May 17, 1968 and May 20, 1968 by one of RCA's service employees, Jack Hays. On May 17 Hays was assisted by two of Eastmount's employees, the Susquehanna's radio officer and the first assistant engineer.[2] The work that day involved

---

1. The district court found that Eastmount was not precluded by its own conduct. The judgment of that court denying indemnity is incompatible with this finding. See note 3 infra.

2. Eastmount now challenges Judge Lasker's finding of fact that two of its employees assisted Hays on the 17th of May. Although, as the judge noted, Hays originally did not specifically testify that additional parties had assisted him on that date, his original testimony is fairly read as an express denial that any *other* RCA employees had aided him. Hays's subsequent revelation that he had been assisted by *Eastmount* employees is therefore not inconsistent with his previous testimony. Furthermore, Eastmount had the opportunity to offer rebuttal testimony

but it did not do so. Judge Lasker therefore found as a fact that Hays was assisted by an Eastmount employee, the vessel's radio officer, in the cleanup on the 17th and that Eastmount, through this employee, had actual knowledge of the hazardous condition which resulted in the injury to Hurdich. We discern no basis for questioning this finding.

The judge declined, however, to find that the Eastmount employees could be considered as having created the dangerous condition, presumably because of his belief that ultimate responsibility for the manner in which the repairs were performed rested with the workman company RCA. We believe the issue here to be primarily, although not exclusively, a factual rather than a legal one, and

chipping and removing the old insulator so that that the new insulator might be installed at a later date. In the course of removing the old insulator, insulation debris accumulated on the deck of the flying bridge, the area of the vessel upon which the antenna was located. Hays testified that this debris had been cleaned up by the end of May 17 and further asserted that the ship's radio officer had aided in this cleanup. On May 20, Hays returned alone to the flying bridge to fasten the new insulator into place on the antenna. No further debris was created by the bolting operation and no additional cleanup was undertaken.

On June 2, 1968, Hurdich, while walking on the flying bridge, slipped and fell on some of the insulation debris which had purportedly been cleaned up on the 17th of May. Hurdich then initiated the litigation, described above, which has led to this appeal.

■ We heard oral argument before the United States Supreme Court rendered its decision in Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). There the Court held that contribution between joint tortfeasors is permissible under maritime law in noncollision cases, as well as in collision cases, provided that neither of the joint tortfeasors is immunized from a suit which the injured victim of the tort could institute. Inasmuch as Hurdich was not precluded by statute, or otherwise precluded from suing either Eastmount, which he did sue, or the other tortfeasor, RCA, the *Cooper Stevedoring* holding applies here. That holding defeats Eastmount's contention that contribution between joint tortfeasors is impermissible in a noncollision case. Therefore, under *Cooper Stevedoring* the district judge, on the basis of his considered belief that Eastmount and RCA were concurrently at

fault, was entitled to award Eastmount contribution from RCA, and, whether or not more should be awarded, was at least reasonably entitled to assess this contribution at one-half of Hurdich's recovery against Eastmount. What remains for us to decide is whether the judge should have granted Eastmount more—namely, a full recovery over against RCA on the basis that Eastmount had a right to full indemnity because RCA had breached its implied warranty of workmanlike service. In *Cooper Stevedoring* the Fifth Circuit had affirmed the district court's denial of a request for full indemnity. See 479 F.2d 1041 (5 Cir. 1973). This issue of whether full indemnity should have been granted was not, however, presented for review to the Supreme Court, see 94 S. Ct. at 2176, n. 4 and we thus lack the benefit of a recent clarifying pronouncement on this difficult issue.

■ Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., *supra*, established the right of a vessel owner to be indemnified by a workman company in the event a judgment is recovered against the shipowner for shipboard injuries which are attributable to the careless manner in which the workman company had performed work on the vessel. The theory articulated by the Court to support this doctrine is that the workman company impliedly warrants that it will perform the agreed-upon tasks in a workmanlike manner. Within two years of the decision in *Ryan*, however, the Supreme Court superimposed an important qualification onto the shipowner's right to an indemnity. In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), the Court announced:

"If . . . [the workman company] rendered a substandard perform-

inasmuch as the district court's finding on this score is not clearly erroneous, we do not disturb it. An additional reason why we think it unnecessary to pursue any further the issue of whether Eastmount could be said to have "created" the danger is our be-

lief, upon which we shall later elaborate, that Eastmount's actual knowledge of the dangerous condition and subsequent failure to rectify that condition constitute conduct on Eastmount's part sufficient to foreclose its right to indemnity.

ance which led to foreseeable liability of [the shipowner], the [shipowner] was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.* The evidence bearing on these issues—[the shipowner's] action in making the shelter on its ship available to [the workman company's] employees in Boston although it apparently was unsafe, as well as the [workman company's] continued use of the shelter for five days thereafter without inspection—was *for jury consideration under appropriate instructions.*" Id. at 567, 78 S.Ct. at 441 (footnotes omitted) (emphasis inserted).

Thus a shipowner can by its own conduct foreclose its right to indemnity, and in any particular case the determination of whether the shipowner has so precluded itself is an issue of fact. Regrettably, *Weyerhaeuser* failed to provide ample legal guidelines to be used in making this determination of fact. In the ensuing years the lower federal courts grappled as best they could with the nebulous "Weyerhaeuser dictum" of "absent conduct on its part sufficient to preclude recovery." Eventually, in Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the Supreme Court discussed the philosophy underlying the indemnity concept and then supplied, we believe, the test that should be applied by the factfinder in ascertaining whether the shipowner has engaged in "conduct on its part sufficient to preclude recovery." This test should have been applied by the district court below but was not. The Court, although justifying imposition of liability on a stevedore, enunciated a principle that "liability should fall upon the party best situated to

adopt preventive measures and thereby to reduce the likelihood of injury." *Id.* at 324, 84 S.Ct. at 754. This philosophy of permitting the ultimate loss to fall on the party which was best able to prevent that specific loss has been previously acknowledged in this circuit, see Bertino v. Polish Ocean Line, 402 F.2d 863, 866 (2 Cir. 1968), where we held that a stevedore had breached its warranty of workmanlike performance, and we think it is the only practical standard under which the factfinder can determine if the shipowner should be denied its indemnity.[3]

■ Applying the *Italia* test to the circumstances of this case, we conclude that Eastmount was so situated that it, rather than RCA, was best able to have eliminated the specific risk which caused the injury to Hurdich. The trial judge found, and we agree with him, that Eastmount, through its agent, the vessel's radio officer, had actual knowledge concerning the manner in which the May 17 purported cleanup of the insulation debris had been performed. Eastmount, while adhering to its refusal to concede that any of the vessel's personnel had knowledge of the events of May 17, argues that the fact that the RCA workman returned on the 20th to complete the agreed-upon work renders nugatory any knowledge the vessel may have had of any debris carelessly left on the deck on the 17th. To be sure, Hays performed the bolting operation of the 20th in the vicinity of the spot where the insulation debris had fallen and which supposedly had been cleaned up on the 17th. While this fact is somewhat troubling, we choose to accept the district court's apparent view that the work performed on the 20th, which, as stated above, involved the creation of no additional debris, was sufficiently distinct from the work of the 17th so that

---

3. As noted, we believe the issue of whether the shipowner has precluded itself is an issue of fact. Although denying the request for indemnity, Judge Lasker purported to find as a fact that the shipowner Eastmount had not precluded itself. Aside from the patent *non sequitur* resulting from this purported finding

of fact and the denial of the prayer for indemnity, we disregard this inconsistent purported finding for the additional reason that we believe the district court, by not applying the *Italia* test, applied an inappropriate standard for determining whether the shipowner had precluded itself.

that work should be considered a different task. Moreover, Eastmount presented no testimony to show that its employees had been led to believe that the independent operation of chipping the old insulation and cleaning up the insulation litter was not thought to have been completed on the 17th of May, but, instead, was intended to be finished on the 20th when Hays returned alone to bolt the new insulator into place. Knowing of the debris left on the 17th, and having no justifiable reason to believe that Hays had cleaned it up on the 20th, Eastmount, at least under these circumstances, was obligated to inspect the area after Hays had finished his work on the 20th to determine if the hazardous condition of which it had knowledge had been corrected.

■ Of course this knowledge of an existing dangerous condition is only one of the factors which leads us to hold that Eastmount should be precluded from an indemnity recovery. Perhaps more important than the mere knowledge of the condition on the flying bridge are the related circumstances that Eastmount had the ability to eliminate the risk because it had control over the area where Hurdich was injured, and that, after May 20, as between RCA and Eastmount, Eastmount *alone* was capable of remedying the condition which caused the injury to Hurdich. Although most cases which have explored the issue of whether, on the facts, the shipowner should be foreclosed from indemnity have declared that the shipowner is not precluded when the fault attributed to it has been a failure to *discover* a dangerous condition, see, e. g., Weyerhaeuser Steamship Co. v. Nacirema Operating Co., *supra* 355 U.S. at 568, 78 S.Ct. 438; De Gioia v. United States Lines Co., 304 F.2d 421, 424 (2 Cir. 1962), the cases appear to have left open the question of whether actual knowledge of the hazardous condition, as was present in this case, should preclude the shipowner, see, e. g., Weyerhaeuser Steamship Co. v. Nacirema Operating

Co., *supra* 355 U.S. at 568, 78 S.Ct. 438; Pettus v. Grace Line, Inc., 305 F.2d 151, 154 (2 Cir. 1962). We believe the proper resolution of that open question is obvious when the shipowner's actual knowledge of the dangerous condition is aggravated by the fact that it is the *only* party which over an extended period of time directly preceding the accident could have taken the corrective measures necessary to reduce or eliminate the risk of injury. Indeed, regardless of the legal theory applied in the cases, the issue of whether the shipowner is precluded from indemnity might conceivably have been decided in many of them, as a practical matter, on a determination of whose fault is latest in time, the shipowner's or the workman company's. See, e. g., Sessions v. Fritz Kopke, Inc., 479 F.2d 1041 (5 Cir. 1973), aff'd sub. nom. Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); United States Lines, Inc. v. Jarka Corp., 444 F.2d 26 (4 Cir. 1971); Misurella v. Isthmian Lines, Inc., 328 F.2d 40 (2 Cir. 1964); Pettus v. Grace Line, Inc., *supra*. Of course, in most instances, this is merely a recognition that the party whose fault is immediately antecedent to the injury is the party who was in the optimal position to prevent the injury. Here a failure on our part to attach significant weight to the sequence of fault would be to countenance the absurd result of making RCA shoulder the entire burden for any injury sustained to anyone arising from the condition of the area where Hurdich was hurt despite Eastmount's exclusive control after May 20 of that area. Logically, the degree of Eastmount's fault should be related to the length of time it permitted the known dangerous condition to persist. The period of over two weeks that elapsed between Eastmount's acquisition of knowledge of the existence of the debris and Hurdich's unwitting discovery of that debris is of sufficient duration to preclude Eastmount's right to indemnity.

Although it is precluded from indemnity, i. e., a full recovery over, Eastmount is entitled to, and was granted by the district court below, contribution from RCA for a portion of the amount Hurdich recovered from Eastmount. We suspect that a practical effect of the Supreme Court's decision in *Cooper Stevedoring*, a case which removed any doubt about the propriety of awarding contribution in maritime noncollision cases in which the plaintiff could have sued either the shipowner or the workman company, or both of them, will be a more enlightened judicial attitude toward finding a shipowner precluded by its own conduct from recovering a *Ryan* indemnity, and finding a negligent workman company liable proportionally with a negligent shipowner. The comparative negligence doctrine is one with which the admiralty has long been familiar, and the change of attitude which we foresee will be a salutary development in this area in which, irrespective of proportionate fault, full liability has been heretofore sought to be transferred. When, under *Cooper Stevedoring*, the shipowner has a right to contribution, there is no longer any justification for the perfunctory rejection of the workman company's claim that the shipowner by its own wrongful conduct has precluded itself from its right to indemnity. The inflexibility of application of the *Ryan* doctrine was a product of the blanket prohibition against contribution in noncollision cases. The disappearance of that prohibition should presage the development of a more equitable and realistic approach toward dividing the burden between parties who are mutually at fault. Judge Lasker anticipated that realistic approach, and we affirm his commendable solution.[4]

Judgment affirmed.

---

4. We note that Hurdich was a seaman employee of the shipowner and, moreover, was injured in 1968. He was not covered by the provisions of the Longshoremen's and Harbor Workers' Compensation Act and the Amendments to that Act of 1972 are not applicable here. For a discussion of the change these amendments have made in applicable areas see Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. at 113, note 6, 94 S.Ct. at 2178, note 6.