**Joseph RODRIGUEZ, Plaintiff,**

v.

**OLAF PEDERSEN'S REDERI A/S, Defendant and Third-Party-Plaintiff,**

v.

**AMERICAN STEVEDORES, INC., and A. M. Kristopher Co., Inc., Third-Party-Defendants.**

No. 68 C 409.

United States District Court,
E. D. New York.

Dec. 27, 1974.

Haight, Gardner, Poor & Havens by W. P. Kain, Jr. and Thomas F. Molanphy, New York City, for defendant and third-party-plaintiff.

Alexander, Ash, Schwartz & Cohen by Joseph Arthur Cohen, New York City, for third-party-defendants.

MEMORANDUM AND ORDER.

NEAHER, District Judge.

This action was originally instituted by a longshoreman (Rodriguez) to recover damages from defendant shipowner (Pedersen) for injuries he sustained while aboard the latter's ship. Pedersen, in turn, impleaded Rodriguez's employer, American Stevedores, Inc. (American) seeking indemnification for the monetary damages Pedersen was required to pay to Rodriguez. The case is now before the court solely on the indemnity claim; but in order to better understand the questions presented, the prior proceedings and present posture of the case will be briefly stated.

After a trial in 1971 before the late Judge Rosling of this court, the jury returned a verdict in favor of Rodriguez against Pedersen in the amount of $35,000. In answer to special interrogatories, the jury found the ship unseaworthy and the shipowner negligent but also found Rodriguez contributorily negligent and reduced his damages from $80,000 to the amount announced. Upon subsequent submission of Pedersen's claim for indemnity, the jury returned a separate verdict in favor of American denying Pedersen a recovery over. Pedersen then moved for judgment n. o. v.

or a new trial on the indemnity claim. Judge Rosling granted Pedersen the new trial.[1]

Pedersen has now moved for summary judgment on its indemnity claim, asserting that there are no new facts to be adduced at a new trial and that on the facts as brought out on the first trial, it is entitled to judgment as a matter of law. American opposes Pedersen's motion and has cross-moved under Rule 60(b), F.R.Civ.P., to set aside the order granting Pedersen a new trial and for reinstatement of the jury verdict denying indemnity. In so moving, American also acknowledges "that no purpose would be served by a new trial other than to have the record of the first trial read to a different jury."[2] In short, both sides agree that all relevant facts are before the court.[3]

Before turning to the facts, the somewhat unusual posture of the case requires threshold consideration of the propriety of entertaining a motion for summary judgment at this juncture. The indemnity claim clearly remains as a completely separate action, having been "severed and deferred for later jury trial" by Judge Rosling.[4] Although such a trial was had, no judgment has ever been entered determining the action. The jury's verdict denying in-

---

1. Judgment was entered for plaintiff on the jury verdict and was not appealed. Judge Rosling died before a new trial could be commenced and the case was subsequently reassigned to the writer.

2. Affidavit in Support of Third Party Defendant's Motion, dated February 6, 1974, at 2.

3. In its statement pursuant to General Rule 9(g) of this court, Pedersen stipulated that: "4. From the testimony and jury findings at the first trial, defendant and third party plaintiff stipulates, for the purposes of this motion, that it negligently created an unseaworthy condition which was a proximate cause of plaintiff's accident in that: The vessel's Chief Officer directed the foreman of ship cleaners employed by third party defendant . . . to cover the No. 2 hatch on the weather deck and not replace such covers in the lower decks of that hatch as had been removed during the course of cleaning operations; that such action left the No. 2 in total darkness and that the doors of the No. 4 'tween deck, which gave plaintiff initial access back to the No. 2 hatch, were not locked, were ajar, and there were no signs warning persons, such as plaintiff, that the conditions described above, existed." American does not dispute any of the foregoing facts or claim there are any additional facts. All that American says in its Rule 9(g) statement is that: "Our position is that both the Shipowner and the Stevedore are bound by the jury determinations of Shipowner's negligence and plaintiff's contributory negligence, and that those findings evidence the existence of a factual issue on indemnity precluding conduct." Affidavit of Joseph Arthur Cohen, Esq.

4. See Decision and Order ("Decision") filed September 28, 1971, at 2.

demnity was set aside and a new trial ordered with a strong suggestion that the existing evidence was insufficient to support such a verdict.[5] The parties say that additional evidence does not exist. A judgment deciding the case one way or the other would seem to be in order.

American, in opposing the use of summary judgment procedure, suggests that the court merely "recall the order granting a new trial" and direct entry of judgment on the vacated jury verdict in its favor.[6] It contends that Judge Rosling having denied Pedersen's motion for judgment notwithstanding the verdict, the latter's declared intention not to offer additional proof is a waiver of its right to a new trial. Consequently, American argues, it should be relieved of the new trial order under Rule 60 (b), the jury verdict in its favor should be reinstated, and judgment should be entered accordingly.[7]

Aside from the technical difficulties American's Rule 60(b), contentions present,[8] the court sees only two routes to an appealable judgment on the indemnity claim: (1) resubmission of the same evidence to a new jury which neither party desires and which seems to make no sense here; or (2) re-examination by the court of the facts not in dispute, whether established by jury verdict or otherwise, to determine if judgment on the merits can be rendered as a matter of law. Pedersen's motion for summary judgment urges route (2) and impresses the court as the better course.

■ Although a judge should not ordinarily disturb previous rulings of another judge in the same case, "the law of the case" rule is not so inflexible as to permit of no exception. Certainly it should not prevent the discharge of a judge's obligation to present an appellate court with the judgment he believes ought to be rendered in the case. Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131 (2 Cir.), cert. dism., 352 U.S. 883, 77 S.Ct. 104, 1 L. Ed.2d 82 (1956), cited by Pedersen, supports such a view. See also Petition of Kinsman Transit Company, 388 F.2d 821, fn. 9 at p. 825 (2 Cir. 1968); Ross Products, Inc. v. New York Merchandise Co., 242 F.Supp. 878 (S.D.N.Y. 1965); Kaminsky v. Abrams, 281 F. Supp. 501 (S.D.N.Y.1968); Rogers v. Valentine, 426 F.2d 1361, fn. 2 at p. 1363 (2 Cir. 1970).

■ Finding no sound reason for holding that the prior rulings herein bar reconsideration of the merits of Pedersen's claim, we now examine what the parties agree are the facts which gave rise to that claim.

On July 3, 1967, Rodriguez and other members of his gang were discharging cargo from Pedersen's M/V "Sunny Prince." The gang was working on the upper 'tween deck level of hatch #2, when Rodriguez was summoned from that hatch at about 11:00 a. m. and directed to hatch #4 to do some unloading. When Rodriguez left hatch #2 he left his gloves and hook there, anticipating that he would return to work in that hatch. Shortly after arriving at hatch #4, he realized he would not be returning to hatch #2, and after having his lunch, he requested permission from his superior to go back to hatch #2 to retrieve his gloves and hook.

Meanwhile, unknown to Rodriguez, ship's cleaners in the employ of A. M. Kristopher Co., Inc., had gone into hatch #2 to clean out the debris remaining after the completion of the unloading. In order to do so it was necessary for them to remove the covers from the upper 'tween deck. After they had completed the task, they asked the ship's chief officer whether they should replace the covers and were told by him not to do so. He also instructed them to close

5. Decision at 4–5.

6. Affidavit in Support of Third Party Defendant's Motion, dated February 6, 1974, at 3.

7. Brief in Support of Third Party Defendant's Motion under Rule 60 at 2.

8. Defendant and Third Party Plaintiff's Memorandum of Law, etc. at 3–4.

**758**

the main deck hatch opening. This, of course, left the #2 upper 'tween deck level in total darkness with a previously covered floor aperture now open.

As Rodriguez proceeded from hatch #4 to hatch #2, he walked through a door which had been left ajar and which gave access to a passageway connecting the two hatches at the 'tween deck level. Concededly there were no signs giving notice of the changed conditions in hatch #2. As it was dark in the passageway, Rodriguez used a small "penlight" for illumination. After arriving in the #2 hatch 'tween deck area, he tripped over the hatch coaming and fell through the uncovered opening into the lower hold, thereby sustaining his injuries.

■ Until Congress, in 1972, revised. the statutory provision relating to actions of this nature,[9] the law in this circuit was well established that a finding of contributory negligence on the part of a plaintiff longshoreman caused his employer, the stevedore company, to be held liable per se to indemnify the defendant shipowner, Hartnett v. Reiss Steamship Company, 421 F.2d 1011, 1018 (2 Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 49, 27 L.Ed.2d 90 (1970); McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334, 1336 (2 Cir.), cert. denied,[10] 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); Mortensen v. A/S Glittre, 348 F.2d 383 (2 Cir. 1965),[11] absent a finding that the shipowner prevented the stevedore company from fulfilling its warranty of workmanlike performance, Weyerhaeuser S.S. Company v. Nacirema Operating Company, Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

Here, it is undisputed that upon the liability trial, the jury found plaintiff's contributory negligence to be in excess of 55%. Without more, Pedersen would be entitled to a judgment over against American. A jury on the same evidence, however, denied the shipowner indemnity when that issue was presented to it.

Endeavoring to resurrect that verdict, American strenuously argues that "the jury determinations of shipowner's negligence and [Rodriguez's] contributory negligence . . . evidence the existence of a factual issue on indemnity precluding conduct," n. 4 *supra.*

■ While it is true that "the issue of whether the shipowner has precluded itself is an issue of fact," Hurdich v. Eastmount Shipping Corp., 503 F.2d 397, at 401, n. 3 (2 Cir. 1974) this is not to be taken as barring judicial evaluation of the sufficiency of the evidence relied on to support a finding that the shipowner should be denied indemnity. Indeed, it seems manifest that Judge Rosling set the jury's verdict aside and ordered a new trial because he viewed the existing evidence as insufficient to warrant such a denial.[12] In effect, the stevedore—not the shipowner—was given a second opportunity to develop facts to support its contention that indemnity should be denied.

On this motion the parties are in agreement that there is no additional evidence. The court must, therefore, decide anew whether on the essentially conceded facts a jury could reasonably infer that Pedersen's part in Rodriguez's accident constituted "conduct on its part sufficient to preclude recovery" of in-

---

9. 33 U.S.C. § 905(a) and (b) now provide in pertinent part:
   "(a) The liability of an employer prescribed in section 904 of this title shall be exclusive . . . ..
   "(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . . "

The instant action involves injuries sustained prior to the effective date of the statutory provision and is thus not governed thereby. See Julian v. Mitsui O.S.K. Lines Ltd., 479 F.2d 432, 434 (5 Cir. 1973).

10. Sub nom., Golten Marine Company v. Trelleborgs Angfartygs.

11. The theory behind this vicarious imposition of liability is that the employer warrants "to furnish employees who . . . will not negligently expose themselves to injury." McLaughlin, supra, 408 F.2d at 1337.

12. Decision at 4-5.

demnity from American. *Weyerhaeuser, supra,* 355 U.S. at 567, 78 S.Ct. at 441.

█ Exactly what constitutes conduct sufficient to preclude recovery was not explained in *Weyerhaeuser.* Cases in this circuit, while not striving for a precise definition, have established a meaningful parameter. Thus, in Albanese v. N.V. Nederl. Amerik Stoomv. Maats, 346 F.2d 481, 484 (2 Cir.), rev'd on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965), the Court of Appeals stated:

> "Whatever fault of a shipowner may be said to relieve the stevedore of his duty under the warranty, it seems plain that it must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Merely concurrent fault is not enough. . . ."

The above-quoted language was later approved in Mortensen v. A/S Glittre, *supra,* in which a jury found for Mortensen, a painter, against the shipowner but reduced its verdict by approximately one-third because of Mortensen's contributory negligence. The trial court then directed a verdict on an indemnity claim in favor of the shipowner against Mortensen's employer, a ship-painting contractor, on the theory that the jury's finding of contributory negligence mandated a finding as a matter of law that the employer had breached its warranty of workmanlike performance.

On appeal, the employer argued that the question of whether the shipowner's conduct was a bar to recovery should have been left to the jury. The Court of Appeals rejected the contention in language apposite here:

> "It is well established that the mere creation of the unsafe condition is insufficient to preclude recovery over when the contractor's own negligence has brought the unseaworthiness of the vessel into play. *E. g.,* Crumady v. J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).
>
> "Despite every opportunity to do so during the course of the trial, no effort was made to show and no claim was made that Glittre's conduct consisted of anything more than the creation of the hazard which underlay the unseaworthiness claim, let alone that it amounted to 'active hindrance' of the contractor in the performance of its contractual duties, which as we stated in Albanese, supra, . . . is required to defeat the indemnification action." 348 F.2d at 385.

Requiring an active hindrance by the shipowner of the stevedore's performance is, manifestly, an appropriate standard in view of the fact that the stevedore's warranty is founded in contract, and not tort, law. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). We are thus concerned not with weighing relative degrees of fault but with ascertaining causation in fact, *i. e.,* whether the shipowner's conduct, as imputed from its employees, actually interfered with the proper performance of the stevedore's job.

In deciding this question of causation, the trier of the facts is charged by the Court in *Italia, supra,* to place liability "upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury" (376 U.S. at 324, 84 S.Ct. at 754). See Hurdich v. Eastmount Shipping Corp., *supra,* 503 F.2d at 401.

Here, a finding of fault on Pedersen's part must necessarily center around the creation by the ship's own officer of a potentially hazardous condition in hatch #2. This trap for the unwary is reminiscent of the oil "slick" in *Mortensen, supra.* In *Mortensen* it was the careless failure of the plaintiff workman to obey a direction to clean up any "slick" observed which brought about the chain of events resulting in the accident. Here, too, it was Rodriguez's own careless action in walking into the darkened hatch which brought about his injuries.

In this case there is a total absence of evidence warranting an inference that

**760**

the creation of the hazard constituted interference by the shipowner with the stevedore's fulfillment of his warranty of workmanlike performance. Rodriguez did not enter hatch #2 in order to perform any assigned task. Pedersen had no reason to expect longshoremen to be in that hold, since the stevedores' work there had been completed. And if the *Italia* test is to be applied, Rodriguez and his gang boss were best situated to avoid the danger by inspection of the area with an adequate light.

In Bertino v. Polish Ocean Line, 402 F.2d 863, 866 (2 Cir. 1968), the court noted:

"Even if the danger was created by the shipowner, indemnity over is permitted if the condition was obvious and the stevedore continued to work or did not correct it."

That language is also apposite here. Even though the darkened condition in hatch #2 was created by Pedersen, it presented an obviously dangerous situation to Rodriguez, calling for the exercise of caution and the use of an adequate light. He nevertheless entered the hatch aided only by a "penlight." Rodriguez's own careless action having brought the danger into play, the shipowner may not be denied indemnity for having created the danger. See United States Lines, Inc. v. Jarka Corp., 444 F.2d 26 (4 Cir. 1971); H & H Ship Service Co. v. Weyerhaeuser Line, 382 F.2d 711 (9 Cir. 1967).

Evaluating the facts of this case against the standards of causation established by *Hartnett-McLaughlin-Mortensen, supra,* it seems clear that the concurrent fault of Pedersen cannot be said to have prevented or handicapped the stevedore in his ability to do a workmanlike job, and that no jury verdict denying indemnity to the shipowner would be legally sustainable.

Pedersen's motion for summary judgment is accordingly granted, the form of judgment to be settled by the parties on notice.

So ordered.