545 F.2d 836
 Benito LOPEZ, Plaintiff-Appellee,
v.
Egan OLDENDORF, Defendant and Third-Party
Plaintiff-Appellant and Appellee,
International Terminal Operating Co., Inc., and Hoffman
Rigging and Crane Service, Inc., Third Party
Defendants-Appellants and Appellees.
Benito LOPEZ, Plaintiff-Appellee,
v.
Egan OLDENDORF and Hoffman Rigging & Crane Service, Inc.,
Defendants-Appellants and Appellees.
 Nos. 162-164, Dockets 76-7208, 76-7211 and 76-7212.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 19, 1976.
Decided Dec. 9, 1976.
 
 Robert Klonsky, Brooklyn, N.Y. (DiCostanzo, Klonsky & Cutrona, Brooklyn, N.Y.), for plaintiff-appellee.
 Victor S. Cichanowicz, New York City (Cichanowicz & Callan, New York City), for defendant and third party plaintiff-appellant and appellee.
 Joseph A. Cohen, New York City (Alexander, Ash, Schwartz & Cohen, New York City, Sidney A. Schwartz, New York City, of counsel), for third party defendant-appellant and appellee.
 Robert S. Blanc, New York City (Hill, Betts & Nash, New York City), for third party defendant-appellant and appellee.
 Before WATERMAN and MULLIGAN, Circuit Judges, and POLLACK*, District Judge.
 MULLIGAN, Circuit Judge.
 
 
 1
 On October 21, 1968, International Terminal Operating Co., Inc. (ITO), a stevedoring company, and Hoffman Rigging & Crane Service, Inc. (Hoffman), the owner and operator of a shoreside crane hired by ITO, were engaged in unloading a cargo of steel beams from the M/V Jobst Oldendorf, a vessel owned by Egan Oldendorf. The vessel was tied up with her portside inshore and her starboard side offshore. Prior to the arrival of the longshoremen, the ship's personnel removed the lashings and chocks which had secured the stow. The Hoffman crane, operated by Leo Hogan, was driven onto the pier alongside the hatch of the vessel and received instructions from an ITO signalman.
 
 
 2
 The accident which occasioned this litigation occurred with the removal of the first draft. The plaintiff Benito Lopez and three other longshoremen secured the first draft with chains and attached them to the cargo hook of the crane. The ITO signalman then instructed Hogan merely to hoist the hook with the cargo attached. Instead, Hogan raised the boom of the crane, causing the draft to drag from the offshore side over to the inshore side. The draft struck and dislodged a beam which fell over and onto Lopez's leg.
 
 
 3
 Lopez brought suit in the United States District Court for the Southern District of New York, Hon. Inzer B. Wyatt, District Judge, against Oldendorf, alleging both unseaworthiness of the vessel as well as negligence. Oldendorf impleaded ITO, Lopez's employer, and Hoffman, seeking indemnity from both. Hoffman and ITO cross-claimed against each other, seeking both indemnity and contribution. During the trial, Lopez was permitted to amend his complaint to sue Hoffman directly for negligence. The action by Lopez against Oldendorf was tried to a jury. All claims among Oldendorf, ITO and Hoffman, as well as Lopez's action against Hoffman, were tried to the court. Counsel for all parties participated in the jury trial of the Lopez action against Oldendorf.
 
 
 4
 In the jury trial, a special verdict was returned on February 10, 1976 which provided: a) Lopez failed to establish his claim of unseaworthiness against Oldendorf, b) Lopez did establish his claim of negligence against Oldendorf, c) Lopez's total damages amounted to $365,000, and d) Lopez was 15% contributorily negligent. Because of the last finding, Lopez's recovery was reduced to $310,250. The court then undertook the resolution of the remaining issues. Because of its employee's 15% contributory negligence, ITO was held to have breached its warranty of workmanlike service and was obligated to indemnify Oldendorf. Hoffman was held liable to Lopez for the negligence of Hogan in operating the crane. The final judgment made Oldendorf and Hoffman jointly and severally liable. If Oldendorf paid the judgment, it was to recover 50% from both ITO and Hoffman. If Hoffman paid, it was awarded 50% contribution from ITO. Oldendorf was denied counsel fees, and all other cross-claims were dismissed. The various arguments raised on appeal are considered seriatim.
 
 
 5
 Oldendorf makes two arguments for reversal of the judgment against it. It first contends that there was insufficient evidence to submit the case to the jury, citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) for the proposition that a ship owner is not required to provide an accident-free vessel. This is a correct statement of the law, but the court's charge to the jury included this qualification. The factual issue was whether the lashings and chocks had been removed prior to the accident, and if they were, whether this constituted unseaworthiness or negligence. The resolution of this question, upon which there was conflicting evidence, was well within the classic function of the jury.
 
 
 6
 Oldendorf also contends that the verdict was fatally inconsistent in finding that this act, although not rendering the vessel unseaworthy, was nonetheless negligent. In this circuit we have held that every effort must be made to reconcile such apparently contradictory findings, Henry v. A/S Ocean,512 F.2d 401, 405-06 (2d Cir. 1975). Moreover, although the issue here is close, Oldendorf waived any claim of error on this ground when it failed to challenge that portion of the charge which instructed the jury that "you must consider and make a separate determination as to this second or alternative theory no matter how you decide the unseaworthiness theory."
 
 
 7
 Hoffman argues that it is not liable because its crane operator, Hogan, was the borrowed servant of ITO. However, in a comparable factual setting, the Supreme Court has held that the mere reception of signals by a winchman from a stevedore's foreman did not operate to relieve the winchman's employer of liability for the negligence of its employee. Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). Hoffman also contends that the granting of plaintiff's informal motion to proceed directly against it in February 1976, without requiring compliance with Fed.R.Civ.P. 14(a), deprived it of the opportunity to demonstrate prejudice from the delay in the assertion of this claim. Aside from its failure to indicate the nature of such prejudice, Hoffman was an active participant in the case from the time of its joinder as a third party defendant in 1969. The nature of its potential liability having been clear from the beginning and developed at trial, the motion to amend the complaint cannot have come as any surprise. Cf. Wasik v. Borg, 423 F.2d 44, 46 (2d Cir. 1970). Finally, Hoffman challenges the jurisdiction of the court below to have entertained the direct action in the face of an absence of diversity of citizenship between itself and Lopez. However, P 4 of the amended complaint clearly indicates that the basis of jurisdiction is the "admiralty and maritime nature of the claim." Fed.R.Civ.P. 9(h).
 
 
 8
 ITO contends that it was error to award Oldendorf indemnity against it, and to grant Hoffman a 50% contribution from it. Although the award in favor of Oldendorf was styled an "indemnity," it was more in the nature of contribution since ITO's liability was limited to 50% of the damages rather than a full recovery over. In these circumstances, the court below constructively denied Oldendorf indemnity pursuant to Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). We agree that Oldendorf is precluded from obtaining indemnity from ITO, Hurdich v. Eastmount Shipping Corp., 503 F.2d 397, 401-02 (2d Cir. 1974), since between them Oldendorf was the party "best situated to adopt preventive measures and thereby to reduce the likelihood of injury." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964). Since we conclude that Oldendorf is precluded from obtaining indemnity, the theory upon which ITO was found liable, we reverse that portion of the judgment granting Oldendorf a 50% recovery from ITO. This disposition defeats Oldendorf's claim for attorney's fees since while they are recoverable when the ship owner is entitled to indemnity, DeGioia v. United States Lines Co., 304 F.2d 421, 426 (2d Cir. 1962), such an award is inappropriate where, as here, indemnity is precluded.
 
 
 9
 Equally unsupportable is the 50% contribution awarded Hoffman against ITO. Inasmuch as ITO furnished its employee Lopez with the benefits required by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., it is not subject to a claim for contribution. Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); Hurdich v. Eastmount Shipping Corp., supra, 503 F.2d at 400; Williams v. Pennsylvania R.R., 313 F.2d 203, 210 (2d Cir. 1963).
 
 
 10
 We therefore affirm that portion of the judgment holding Oldendorf and Hoffman jointly and severally liable. In view of the findings below that both were negligent, each is to bear ultimate responsibility for one-half of the plaintiff's damages. We reverse the award of indemnity to Oldendorf against ITO, as well as the contribution granted Hoffman from ITO. In view of the eight-year period which has elapsed since the accident occurred, the mandate shall issue forthwith.
 
 
 
 *
 Hon. Milton Pollack, United States District Court for the Southern District of New York, sitting by designation