# COOPER STEVEDORING CO., INC. *v.* FRITZ KOPKE, INC., ET AL.

No. 73–726.   Argued April 15–16, 1974—Decided May 28, 1974

MARSHALL, J., delivered the opinion of the Court, in which all Members joined except STEWART, J., who took no part in the decision of the case.

*Joseph D. Cheavens* argued the cause and filed a brief for petitioner.

*Bruce Dixie Smith* argued the cause and filed a brief for respondents.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case concerns the extent to which contribution between joint tortfeasors may be obtained in a maritime

action for personal injuries. The S. S. *Karina,* a vessel owned and operated by respondent Fritz Kopke, Inc., and under time charter to respondent Alcoa Steamship Co., was loaded at Mobile, Alabama, with palletized crates of cargo by petitioner Cooper Stevedoring Co. The vessel then proceeded to the Port of Houston where longshoremen employed by Mid-Gulf Stevedores, Inc., began to load sacked cargo. The Houston longshoremen had to use the top of the tier of crates loaded by Cooper as a floor on which to walk and stow the Houston cargo. One of these longshoremen, Troy Sessions, injured his back when he stepped into a gap between the crates which had been concealed by a large piece of corrugated paper.

Sessions brought suit in the District Court against Kopke and Alcoa (hereinafter collectively the Vessel) seeking to recover damages for his injuries.[1] The Vessel filed a third-party complaint against Cooper alleging that if Sessions was injured by any unseaworthy condition of the vessel or as the result of negligence other than his own, such condition or negligence resulted from the conduct of Cooper and its employees. The Vessel also filed a similar third-party complaint against Mid-Gulf.

Prior to trial, Mid-Gulf and the Vessel apparently entered into an agreement under which Mid-Gulf would indemnify the Vessel against any recovery which Sessions might obtain. Pursuant to this agreement, Mid-Gulf was dismissed as a third-party defendant and Mid-

---

[1] This suit was commenced prior to the enactment of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 901–944 (1970 ed., Supp. II), and all parties agree that the amendments are therefore not applicable. Accordingly we need not decide whether Sessions' suit against the Vessel or the Vessel's third-party complaints against Cooper or Mid-Gulf could be brought under the Act, as amended. See § 905 (b).

Gulf's attorneys were substituted as counsel for the Vessel.[2]

The case then went to trial, after which the District Court, which sat without a jury, orally announced its findings of fact and conclusions of law. The court found that the Vessel's failure either to make adequate arrangements to assure that the stow would not move and leave spaces in the course of its trip from Mobile to Houston or to put some type of dunnage on top of the stow had resulted in an unsafe place to work and unseaworthy condition. The court found that Cooper was also negligent in not stowing the crates in a manner in which longshoremen at subsequent ports could safely work on top of them. Finding it difficult from the evidence to "evaluate exactly the responsibility between the shipowner on the one hand and Cooper on the other," the District Court divided the liability equally between the Vessel and Cooper.[3]   Judg-

---

[2] Petitioner suggests that the Vessel cannot recover contribution because it has already been fully indemnified for the judgment under its agreement with Mid-Gulf. See W. Prosser, Law of Torts §§ 48–49 (4th ed. 1971). But this suggestion rests on a faulty construction of the agreement between the Vessel and Mid-Gulf. The latter agreed to indemnify the Vessel only to the extent necessary after trial of the lawsuit, and the assumption of the parties was that Mid-Gulf would step into the Vessel's shoes both to defend the suit brought by Sessions and to prosecute the third-party complaint against Cooper.

[3] Since the District Court concluded that the only apportionment of fault it could reach on the evidence in this case was an equal division, we have no occasion in this case to determine whether contribution in cases such as this should be based on an equal division of damages or should be relatively apportioned in accordance with the degree of fault of the parties. Cf. *The Max Morris*, 137 U. S. 1, 15 (1890). See also *Jacob* v. *New York City*, 315 U. S. 752 (1942); *Socony-Vacuum Oil Co.* v. *Smith*, 305 U. S. 424 (1939); *The Arizona* v. *Anelich*, 298 U. S. 110 (1936). See generally Staring, Contribution and Division of Damages in Admiralty and Maritime Cases, 45 Calif. L. Rev. 304, 340–344 (1957).

ment was entered allowing Sessions to recover $38,679.90 from the Vessel and allowing the Vessel to recover $19,-339.95 from Cooper.

Cooper appealed,[4] asserting that the District Court's award of contribution in a noncollision maritime case was in direct conflict with this Court's decisions in *Halcyon Lines* v. *Haenn Ship Corp.*, 342 U. S. 282 (1952), and *Atlantic Coast Line R. Co.* v. *Erie Lackawanna R. Co.*, 406 U. S. 340 (1972). The Court of Appeals rejected this contention, relying on prior decisions of the Fifth and Second Circuits to the effect that the apparent prohibition against contribution in noncollision maritime cases announced in *Halcyon* and *Atlantic* was inapplicable where the joint tortfeasor against whom contribution is sought is not immune from tort liability by statute. See *Horton & Horton, Inc.* v. *T/S J. E. Dyer*, 428 F. 2d 1131 (CA5 1970), cert. denied, 400 U. S. 993 (1971); *Watz* v. *Zapata Off-Shore Co.*, 431 F. 2d 100 (CA5 1970); *In re Seaboard Shipping Corp.*, 449 F. 2d 132 (CA2 1971), cert. denied, 406 U. S. 949 (1972). The Court of Appeals found this principle applicable here since Sessions, in addition to suing the Vessel, could have proceeded directly against Cooper as the latter was not his employer

---

[4] The Vessel also cross-appealed, contending that the District Court should have allowed it full indemnity from Cooper. The Court of Appeals rejected this argument, relying on the District Court's finding that the Vessel's "conduct precluded its full recovery on the indemnity claim because it failed to fulfill its primary responsibility under its arrangement with Cooper to assure that some type of dunnage was placed on top of the cargo." 479 F. 2d 1041, 1042. Cf. *Weyerhaeuser S. S. Co.* v. *Nacirema Operating Co.*, 355 U. S. 563, 567 (1958). The Vessel did not file a petition for a writ of certiorari to seek review of this aspect of the Court of Appeals' judgment, and we therefore lack jurisdiction to consider its contention that it is entitled to recover full indemnity on the basis of *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.*, 350 U. S. 124 (1956).

and, therefore, not shielded by the limited liability of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 905. 479 F. 2d 1041 (CA5 1973). We granted certiorari to consider this question, 414 U. S. 1127 (1974), and now affirm.

Where two vessels collide due to the fault of each, an admiralty doctrine of ancient lineage provides that the mutual wrongdoers shall share equally the damages sustained by each. In *The North Star,* 106 U. S. 17 (1882), Mr. Justice Bradley traced the doctrine back to the Laws of Oléron which date from the 12th century, and its roots no doubt go much deeper. Even though the common law of torts rejected a right of contribution among joint tortfeasors, the principle of division of damages in admiralty has, over the years, been liberally extended by this Court in directions deemed just and proper. In one line of cases, for example, the Court expanded the doctrine to encompass not only damage to the vessels involved in a collision, but personal injuries and property damage caused innocent third parties as well. See, *e. g., The Washington,* 9 Wall. 513 (1870); *The Alabama,* 92 U. S. 695 (1876); *The Atlas,* 93 U. S. 302 (1876); *The Chattahoochee,* 173 U. S. 540 (1899). See generally *The Max Morris,* 137 U. S. 1, 8–11 (1890). In other cases, the Court has recognized the application of the rule of divided damages in circumstances not involving a collision between two vessels, as where a ship strikes a pier due to the fault of both the shipowner and the pier owner, see *Atlee* v. *Packet Co.,* 21 Wall. 389 (1875), or where a vessel goes aground in a canal due to the negligence of both the shipowner and the canal company, see *White Oak Transp. Co.* v. *Boston, Cape Cod & New York Canal Co.,* 258 U. S. 341 (1922). See also *The Max Morris, supra,* at 13–14. Indeed, it is fair to say that application of the rule of division of damages between

joint tortfeasors in admiralty cases has been as broad as its underlying rationales. The interests of safety dictate that where two parties "are both in fault, they should bear the damage equally, to make them more careful." *The Alabama, supra,* at 697. And a "more equal distribution of justice" can best be achieved by ameliorating the common-law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame. See *The Max Morris, supra,* at 14.

Despite the occasional breadth of its dictum, our opinion in *Halcyon* should be read with this historical backdrop in mind. Viewed from this perspective, and taking into account the factual circumstances presented in that case, we think *Halcyon* stands for a more limited rule than the absolute bar against contribution in noncollision cases urged upon us by petitioner.[5]

In *Halcyon,* a ship repair employee was injured while making repairs on Halcyon's ship. He sued Halcyon for damages, alleging negligence and unseaworthiness. Since the employee was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 901–950, he was prohibited from suing his employer Haenn. Nevertheless Halcyon impleaded Haenn as a joint tort-

---

[5] The lower courts have generally not read *Halcyon* as petitioner suggests, and have continued to recognize a right of contribution in noncollision maritime cases. See, *e. g., Crain Bros., Inc.* v. *Wieman & Ward Co.,* 223 F. 2d 256 (CA3 1955); *Moran Towing Corp.* v. *M. A. Gammino Constr. Co.,* 409 F. 2d 917 (CA1 1969); *Coca Cola Co., Tenco Div.* v. *S. S. Norholt,* 333 F. Supp. 946 (SDNY 1971); *Dow Chemical Co.* v. *Tug Thomas Allen,* 349 F. Supp. 1354 (ED La. 1972); *Bilkay Holding Corp.* v. *Consolidated Iron & Metal Co.,* 330 F. Supp. 1313 (SDNY 1971); *American Independent Oil Co.* v. *M. S. Alkaid,* 289 F. Supp. 329 (SDNY 1967); *Cities Service Refining Corp.* v. *National Bulk Carriers, Inc.,* 146 F. Supp. 418 (SD Tex. 1956).

feasor seeking contribution for the judgment recovered by the employee. We granted certiorari in *Halcyon* to resolve a conflict which had arisen among the circuits as to whether a shipowner could recover contribution in these circumstances. See 342 U. S., at 283–284, and n. 3. One court had held that the employer's limitation of liability *vis-à-vis* its employee under the Harbor Workers' Act barred contribution. See *American Mutual Liability Insurance Co.* v. *Matthews,* 182 F. 2d 322 (CA2 1950). Another Circuit had held that the Act did not bar contribution, see *United States* v. *Rothschild Int'l Stevedoring Co.,* 183 F. 2d 181 (CA9 1950), and yet a third Circuit, in the case reviewed in *Halcyon,* had permitted contribution but limited it to the amount which the injured employee could have compelled the employer to pay had he elected to claim compensation under the Act. 187 F. 2d 403 (CA3 1951).

Before this Court, both parties in *Halcyon* agreed that "limiting an employer's liability for contribution to those uncertain amounts recoverable under the Harbor Workers' Act is impractical and undesirable." 342 U. S., at 284. The Court also took cognizance of the apparent trade-off in the Act between the employer's limitation of liability and the abrogation, in favor of the employee, of common-law doctrines of contributory negligence and assumption of risk. *Id.,* at 285-286. Confronted with the possibility that any workable rule of contribution might be inconsistent with the balance struck by Congress in the Harbor Workers' Act between the interests of carriers, employers, employees, and their respective insurers, we refrained from allowing contribution in the circumstances of that case.

These factors underlying our decision in *Halcyon* still have much force. Indeed, the 1972 amendments to the Harbor Workers' Act re-emphasize Congress' determina-

tion that as between an employer and its injured employee, the right to compensation under the Act should be the employee's exclusive remedy.[6] But whatever weight these factors were properly accorded in the factual circumstances presented in *Halcyon,* they have no application here. Unlike the injured worker in *Halcyon,* Sessions was not an employee of Cooper and could have proceeded against either the Vessel or Cooper or both of them to recover full damages for his injury. Had Sessions done so, either or both of the defendants could have been held responsible for all or part of the damages. Since Sessions could have elected to make Cooper bear its share of the damages caused by its negligence, we see no reason why the Vessel should not be accorded the same right. On the facts of this case, then, no countervailing considerations detract from the well-established maritime rule allowing contribution between joint tortfeasors.

Our brief *per curiam* opinion in *Atlantic Coast Line R. Co.* v. *Erie Lackawanna R. Co.,* 406 U. S. 340 (1972), is fully consistent with this view. In that case a yard brakeman, employed by Erie, brought suit for injuries

---

[6] Under the 1972 amendments, an employee injured on a vessel can bring an action against the vessel for negligence, but the vessel's liability will not be based upon the warranty of seaworthiness or breach thereof. And where the vessel has been held liable for negligence "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U. S. C. § 905 (b) (1970 ed., Supp. II). The intent and effect of this amendment were to overrule this Court's decisions in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85 (1946), and *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.,* 350 U. S. 124 (1956), insofar as they made an employer circuitously liable for injuries to its employee, by allowing the employee to maintain an action for unseaworthiness against the vessel and allowing the vessel to maintain an action for indemnity against the employer. See H. R. Rep. No. 92–1441, pp. 4–8 (1972); S. Rep. No. 92–1125, pp. 8–12 (1972).

sustained while working on a boxcar owned by another railroad, Atlantic, while the boxcar was being transported on a carfloat barge owned by Erie. The accident was allegedly due to a defective footboard and handbrake of the boxcar and the plaintiff sued Atlantic for its negligence in supplying defective equipment. Atlantic sought contribution from Erie on the ground that its negligence was also a factor in causing the injury. The District Court denied contribution, relying on *Halcyon*. The Court of Appeals affirmed and we granted certiorari because it initially appeared that the decision was inconsistent with the Courts of Appeals' decisions in *Horton*, *Watz*, and *Seaboard*, *supra*, which had allowed contribution, notwithstanding *Halcyon*, in situations where the party against whom contribution was sought was not entitled to the limitation-of-liability protections of the Harbor Workers' Act. After oral argument, however, it appeared that the case was factually indistinguishable from *Halcyon*. Erie, against whom contribution was sought, was the plaintiff's employer, and in *Pennsylvania R. Co.* v. *O'Rourke*, 344 U. S. 334 (1953), we recognized that a railroad employee injured while working on a freight car situated on a carfloat in navigable waters was subject exclusively to the Harbor Workers' Act. Erie was therefore entitled to the limitation-of-liability protections of the Harbor Workers' Act, just like the employer in *Halcyon*.

Petitioner argues, however, that this protection was ephemeral in *Atlantic* since, under *Jackson* v. *Lykes Bros. S. S. Co.*, 386 U. S. 731 (1967), the injured employee in *Atlantic* could have sued Erie, the shipowner-employer, for unseaworthiness of the vessel. See also *Reed* v. *The Yaka*, 373 U. S. 410 (1963). But the fact that Erie may have been subject to a suit based on unseaworthiness for damages caused by defective box-

car appliances, compare *The Osceola,* 189 U. S. 158, 175 (1903), with *Gutierrez* v. *Waterman S. S. Corp.,* 373 U. S. 206, 213 (1963), did not make it a joint tortfeasor subject to a contribution claim. Contribution rests upon a finding of concurrent fault. Erie's liability, if any, for unseaworthiness of its vessel would have been a strict liability not based upon fault. In other words, even if Erie were negligent, its injured employee was entitled to claim compensation from it under the Harbor Workers' Act, and Erie was accordingly entitled to the protective mantle of the Act's limitation-of-liability provisions. And to the extent Erie was not negligent but nevertheless subject to a suit on a seaworthiness theory, Erie was not a joint tortfeasor against whom contribution could be sought. See *Simpson Timber Co.* v. *Parks,* 390 F. 2d 353 (CA9), cert. denied, 393 U. S. 858 (1968).

In sum, our opinion in *Atlantic* was not intended to answer the question posed by the present case, as its failure to discuss *Horton, Watz,* and *Seaboard* indicates. Rather, *Atlantic* proves only that our decision in *Halcyon* was, and still is, good law on its facts.

*Affirmed.*

MR. JUSTICE STEWART took no part in the decision of this case.