Michael CASTELLANO, Plaintiff,

v.

Rudolf A. OETKER, POLARSTEIN, Defendant.

Rudolf A. OETKER, Defendant and Third-Party Plaintiff,

v.

BAY RIDGE OPERATING CO., INC., and Standard Fruit & Steamship Co., Third-Party Defendants.

No. 72 Civ. 1443.

United States District Court, E. D. New York.

May 9, 1975.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff.

Kirlin, Campbell & Keating, New York City, for third-party defendant Bay Ridge.

Chichanowicz & Callan, New York City, for defendant and third-party plaintiff Oetker.

Sergi & Fetell, Brooklyn, N. Y., for third-party defendant Standard Fruit.

## OPINION

PLATT, District Judge.

Plaintiff sued the defendant, Rudolf A. Oetker ("Oetker"), who owned the S.S. Polarstein (the "Vessel"), for injuries sustained while he was working as a longshoreman unloading a cargo of bananas from such Vessel when the same was berthed at Pier 42 East River, New York, on January 15, 1970.

The Vessel filed a third-party complaint against Bay Ridge Operating Co., Inc. ("Bay Ridge") and Standard Fruit & Steamship Co. ("Standard Fruit") alleging in the case of Bay Ridge a breach on its part of its warranty to perform its services as a stevedore (plaintiff's employer) in a reasonably safe, proper, careful, prudent and workmanlike manner, as well as affirmative negligence and fault and as against Standard Fruit negligence and breach of duty to supply reasonable safe, fit and seaworthy materials and conveyor equipment and tools.

Bay Ridge cross-claimed against Standard Fruit alleging negligence and breach of agreement to provide the Vessel with safe, proper, fit and seaworthy equipment and tools, and counterclaimed against the Vessel alleging negligence, breach of warranty of seaworthiness and breach of the express and implied terms of its contract with Bay Ridge. Standard Fruit in turn has cross-claimed for indemnification against Bay Ridge.

Standard Fruit owned, and furnished to the Vessel and Bay Ridge, the conveyor equipment used aboard the Vessel on January 15, 1970 to unload the banana boxes.

Bay Ridge was working aboard the Vessel on January 15, 1970, pursuant to a stevedore contract with Standard Fruit dated December 1, 1969.

Bay Ridge installed, rigged, unrigged, repaired and maintained the conveyor equipment aboard the Vessel, including the operation and control of the conveyor equipment.

Plaintiff was lawfully aboard the Vessel as an employee of Bay Ridge on January 15, 1970, engaged in the performance of electrical maintenance work at about 10:30 p. m. on that date.

The reasonable value of the medical treatment provided for plaintiff as a result of his alleged accident and injuries sustained was $2,184.98.

On January 15, 1970, about 10:30 p. m., the plaintiff, an electrical maintenance man, was working in the hold or on "D" deck in the #2 hatch disconnecting a conveyor when he was struck on the upper portion of his body by a box of bananas which fell from a point on a conveyor roller between B and A decks.

At that time identical conveyor belts had been installed from D deck to C deck and from C deck to B deck and belts identical to one another had also been installed along the B, C and D decks and a similar conveyor belt had been installed from B deck to A deck; all for the purpose of conveying banana boxes from D deck up and off the vessel at a point on the A deck.

The conveyors between the lower three decks had side rails approximately 3½ to 4½ inches high and the conveyor from B deck to A deck had side rails approximately 2½ to 3 inches in height.

The use of such different conveyors from B deck to A deck was, and had been for many years, apparently standard practice in the unloading of Standard Fruit's banana boxes.

Some months before the accident Standard Fruit had started using a new type of box known as a "Zulu" which was higher (by about 4 inches) and shorter than the old boxes used to crate and ship bananas. According to the testimony, during the day of January 15 the longshoremen had been unloading the old type boxes and around 6:30 to 7:00 o'clock in the evening the new type box (Zulus) started to come up the conveyors.

Standard Fruit and the Vessel, of course, knew that the taller boxes (the Zulus) were stowed in the lower decks of the Vessel and would be conveyed over the equipment which had been supplied by Standard Fruit and used for many years.

The operator (Jackson) of the conveyor between B deck and A deck testified that at some unspecified time before the accident a "mate" of the vessel was there at his station when a box fell from the conveyor into the hold apparently without injury to anyone. The mate, after observing this incident, left the scene without comment.

Fifteen minutes before the accident a "mate" of the vessel came to a point beside Jackson and the boxes got hung up on the conveyor belt between the B deck and the A deck. The mate asked Jackson whether a man was not supposed to be stationed at the point on the B deck where the conveyor turned to rise to the A deck; there was none there at the time to prevent the "hangup". Again, after observing this incident, the mate left the scene without any action or comment.

Following the mate's departure "the same thing happened" and, after the operator of the conveyor from B deck to C deck had "straightened" up the boxes again, Jackson started the belt again, it "jumped", the boxes started to tumble and one fell over the side of the conveyor, went down the hatch and struck the plaintiff working below on the D deck.

The testimony further showed that good and normal practice required that there be two (not one) longshoreman on B deck, one the operator of the conveyor from C to B deck and the other a "guider" for the boxes at the turning point from B deck to A deck. The latter was the person missing both shortly before and at the time of the accident.

The plaintiff argued to the jury that the defendant was negligent in that:

1. the defendant knew or should have known that the side rails on the conveyor from B deck to A deck were inadequate to contain the larger boxes of bananas (the Zulus) being conveyed from the B deck to the A deck.

2. the defendant knew or should have known that the operation was being conducted by insufficient personnel in that there was no longshoreman stationed at the turning point of the conveyor on B deck where it turned and rose to the A deck.

3. the defendant knew or should have known that no nets were in use below the conveyor in question, and

4. the defendant knew or should have known that the longshoremen were not wearing hard hats.

The plaintiff also argued to the jury that the Vessel was unseaworthy in essentially the same respects, namely, 1) inadequate side rails on the B to A deck conveyor, 2) insufficient personnel and no longshoreman stationed at the turning point of the conveyor on the B deck, 3) no safety nets and 4) no hard hats.

Defendant's expert, Paul J. Keeler, testified that the practice in the industry did not require nets or hard hats to be used in circumstances such as existed in the case at bar and that neither of them were ever used in such cases. While the Safety and Health Regulations for Longshoring provide for the use of nets when two gangs are working in the

same hatch on different levels and the use of hard hats under certain conditions, the Court is not persuaded that the use or lack of use of hard hats was a contributing factor herein or that the provision for the use of nets where there was a "gang" operating in an upper deck has any application to the facts herein.

In response to special interrogatories, the jury found the shipowner negligent as alleged by the plaintiff and that such negligence was a proximate cause of the plaintiff's injuries. The jury also found that the conveyor between the B deck and A deck was in unseaworthy condition in that it was not reasonably suitable and fit for the use intended and that such unseaworthiness was a proximate cause of the plaintiff's injury and further that the use or operation of the conveyor rendered it in an unseaworthy condition which was a proximate cause of the plaintiff's injuries.

The Court sustains the jury's verdict and the jury's answers to the special interrogatories.

■ The Court further finds that the third-party defendant, Standard Fruit, knew or should have known that the taller or Zulu banana boxes were stowed in the lower hold of the Vessel and that the side rails on the conveyor customarily used from B deck to A deck were inadequate to contain the taller boxes being transported on the conveyor from the B deck to the A deck. It is undisputed that the conveyors themselves were owned and furnished to the other defendants by Standard Fruit for use in the unloading operation. Such negligence on the part of Standard Fruit in providing the other defendants with unseaworthy equipment was one of the proximate causes of the accident and plaintiff's injuries.

Under Cooper Stevedoring Company, Inc. v. Fritz Kopke, Inc., et al., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), Standard Fruit is, together with the Vessel, a joint tort-feasor against whom contribution may be had since it

is not immune from tort liability by statute. See also Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

As was also true in the *Kopke* case, the Court finds "it difficult from the evidence to 'evaluate exactly the responsibility between the shipowner on the one hand and [Standard Fruit] on the other' ". The Court will, therefore, divide the liability equally between the Vessel and Standard Fruit.

The Vessel interposed a cross-claim over against the third-party defendant, Bay Ridge, and it claims indemnity from Bay Ridge for breach of its warranty of workmanlike performance.

■ Defendant, Bay Ridge, argues that there was action or inaction on the part of the shipowner which prevented, hindered or seriously handicapped the stevedore in performing a workmanlike job which precludes the shipowner's claim for indemnity. (See Conceicao v. New Jersey Export Mar. Carpenters, Inc., 508 F.2d 437 (2d Cir. 1974)). The "inaction" by the mate of the vessel when he observed a banana box fall into the hold and the absence of a longshoreman on B deck at the turning point of the conveyor from B deck to A deck shortly before a banana box fell on the plaintiff was not, in the opinion of the Court, such as would "prevent, hinder or seriously handicap" Bay Ridge in performing a workmanlike job. There is no question but that the absence of Bay Ridge's longshoreman from his station at the turning point was negligence and rendered the conveyor unseaworthy and was one of the proximate causes of the accident and plaintiff's injuries herein.

In the *Conceicao* case, *supra*, the test for the allowance for indemnity in this type of case was set forth in the following language (508 F.2d at page 443):

"... The allowance or disallowance of indemnity in this type of case depends upon a balance or interplay of the doctrines of unseaworthi-

ness, negligence and breach of the implied contract of workmanlike performance that Judge Clark, in the leading case of DeGioia v. United States Lines Company, 304 F.2d 421 (2d Cir. 1962), stated as follows, at p. 426:

> The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved.

This test was approved and applied by the Supreme Court in Italia Societa v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 324–325, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964)."

It is clear that the party in this case most able to minimize the risk involved insofar as the insufficiency and absence of longshoremen were concerned, was Bay Ridge.

Under the circumstances, the Vessel is entitled to full indemnity from the defendant Bay Ridge for its portion of the damages plus attorneys fees. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

Bay Ridge and Standard Fruit have further interposed cross-claims against each other, both claiming the right to indemnification from the other, and the third-party defendant, Bay Ridge, has interposed a counterclaim against the shipowner claiming a right of indemnification from him. These cross-claims and counterclaim must be dismissed. Standard Fruit's action and inaction with respect to the inadequate and unseaworthy conveyor was such as to prevent, hinder or seriously handicap the stevedore in performing a workmanlike job and Bay Ridge's action or inaction with respect to the insufficiency of a longshoreman on B deck to guide the banana boxes on the conveyor was such as to preclude it from any right to indemnification.

Under the test prescribed by the *Conceicao* decision, *supra,* the result is the same since Standard Fruit was the party most able to minimize the particular risk involved insofar as the conveyors were concerned and, as indicated above, Bay Ridge was such party insofar as the insufficiency or absence of longshoremen were concerned.

If the parties are unable to agree upon defendant's attorneys fees, affidavits in support thereof and in opposition thereto should be submitted within twenty (20) days of the date of this Order.

So ordered.