Bennie SWANS

v.

UNITED STATES LINES, INC., Defendant and Third-Party Plaintiff,

v.

J. A. McCARTHY, INC., Third-Party Defendant.

Civ. A. No. 75-153.

United States District Court, E. D. Pennsylvania.

Dec. 23, 1975.

Arnold C. Grossman, Philadelphia, Pa., for plaintiff.

Clayton H. Thomas, Jr., Philadelphia, Pa., for defendant and third-party plaintiff.

Frank C. Bender, Philadelphia, Pa., for third-party defendant.

OPINION AND ORDER

FOGEL, District Judge.

Third-party defendant in this matter, J. A. McCarthy, Inc. (McCarthy), has filed a motion to dismiss the action as to it under Fed.R.Civ.P. 12(b)(6). Disposition of this matter, apparently raising an issue of first impression with respect to the construction of the word "vessel", requires an interpretation of certain of the amendments enacted by Congress in 1972 to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. This suit was brought by plaintiff against the original defendant, United States Lines, Inc. (United), on the basis of an injury allegedly suffered by him on April 24, 1974, while in the employ of third-party defendant as a longshoreman. Original defendant had retained McCarthy to perform stevedoring activities for the S.S. "American Alliance", then at berth in the port of Philadelphia. The injury is averred to have occurred on the pier while plaintiff was attaching a container to an allegedly defective trailer frame which was owned and operated by United.

Plaintiff, a citizen of Pennsylvania, brought suit against United, a New York corporation with its principal place of business in that state; jurisdiction is based upon diversity of citizenship, as to a claim that exceeds $10,000.00 exclusive of interest and costs, 28 U.S.C. § 1332; plaintiff charges negligence on the part of defendant in the operation and maintenance of the trailer frame. United joined McCarthy as third-party defendant in this action pursuant to Fed.R. Civ.P. 14(a), demanding contribution and/or indemnity based on its averment that McCarthy was negligent in its supervision of the unloading process. McCarthy's motion to dismiss is rooted in the proposition that § 905(b) of the LHWCA[1] renders that company immune from suit by the vessel owner in an ac-

1. Section 905(b) states in full:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was

tion arising from an injury to an employee longshoreman. In response to this contention, United advances a two-pronged defense: *First,* they state that the case of *Victory Carriers v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) ousts federal maritime jurisdiction when an injury occurs on a pier and is caused by pier-based equipment. Thus, United argues that the provisions of the federal LHWCA are not applicable, given the facts of this case; rather, they contend that liability of the third-party defendant must be determined according to Pennsylvania law. *Second,* they state that even if the terms of the LHWCA control the outcome of the third-party claim, § 905(b) does not insulate the stevedore from liability in this case. The latter contention is grounded upon United's construction of the word "vessel" as it is defined in 33 U.S.C. § 902(21) and used in § 905(b); original defendant argues that the owner of a land-based trailer frame into which the cargo of a ship is placed is not a "vessel" as defined by those statutory sections.

We agree with McCarthy that the 1972 amendments to the LHWCA should be interpreted to preclude an action by the vessel owner against the stevedore in this case; we base this finding upon the legislation and its pertinent history. Accordingly, we will grant the motion of third-party defendant to dismiss the third-party complaint.

In reaching this decision we have relied upon supplemental memoranda submitted by both sides; thus having been presented with matters dehors the pleadings within the meaning of Fed.R.Civ.P. 12(b), we will treat the motion as one for summary judgment under Fed.R.Civ.P. 56, and dispose of it in accordance with the provisions of that Rule.

## I. STATEMENT OF THE FACTS AND HISTORY OF THE CASE

The following facts are relevant to disposition of this action:

On April 24, 1974, the S.S. "American Alliance", owned by original defendant, was at berth at Tioga Marine Terminal in Philadelphia. Third-party defendant, an independent contractor, was hired by United to act as stevedore. Plaintiff, who was employed by McCarthy as a longshoreman, was a member of the gang charged with the task of unloading the "American Alliance".

The operation consisted of the removal of cargo containers by crane from the ship to the pier. Containers were first removed from the vessel by means of the shore-based crane, and then lowered onto a trailer frame located on the pier surface; at that point the containers were positioned and secured on the frame, which was then removed from the immediate work area adjacent to the vessel. Plaintiff was stationed on the pier in order to carry out the job of first guiding and then securing the containers upon the frames.

While engaged in the operation of attaching a container to a trailer frame, plaintiff suffered an injury to his left hand, allegedly when it was caught between the container and the frame. Plaintiff avers that the trailer frame, which was owned and controlled by United, was in a defective condition, and that it was maintained in a negligent manner.

It is uncontroverted that the trailer frame was neither a physical part of the vessel, nor located on it. Rather, it had been stored on shore prior to the berthing of the ship, and transported by trailer cab to the side of the vessel when it

caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel

under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

did berth and the cargo operations commenced.

Third-party defendant avers, and United does not dispute, that plaintiff has received compensation benefits under the terms and provisions of the LHWCA, and that McCarthy, as the employer of plaintiff, has provided for the payment of these benefits as required by 33 U.S.C. § 904.

## II. THE LEGAL CONTENTIONS OF THE PARTIES

In seeking dismissal of the complaint, McCarthy relies upon the language of § 905(b); that section authorizes an injured employee to sue the vessel for negligence, and provides specifically that "the employer shall not be liable to the vessel for such damages directly or indirectly." See note 1, *supra*. Third-party defendant argues that plaintiff is clearly an employee within the meaning of the LHWCA, and has in fact already received benefits in accordance with its terms. As the employer of plaintiff, McCarthy contends that it is, by the very words of the statute, insulated from liability in any action between the employee and the vessel owner based on negligence.

Before we can address the issue of the prohibitions of § 905(b), we must deal with the initial contention of United that this matter may not be decided under the provisions of the LHWCA; the gist of this argument is that we cannot apply federal maritime law because we lack the jurisdiction to do so under the facts of this case.

### A. *The Application of Maritime Law to the Third Party Claim*

United avers that the third-party complaint is controlled by Pennsylvania law.[2] As authority for this proposition, original defendant cites *Victory Carriers v. Law, supra*. In *Victory Carriers,* the Court was confronted with the issue of the interaction of state and federal law in the

context of a longshoreman's pier-based injury caused by the stevedore's pier-based equipment. The Court held that state law controlled, thus ousting maritime jurisdiction. In reaching this result, the Court focused on the "historic view . . . that the maritime tort jurisdiction . . . is determined by the locality of the accident." 404 U.S. at 205, 92 S.Ct. at 421. The Court noted that "[n]o case in this Court has sustained the application of maritime law to the kind of accident that occurred in this case", and thus "to afford . . . a maritime cause of action would . . . intrude on an area that has heretofore been reserved for state law." *Id.* at 210, 212, 92 S.Ct. at 424, 425.

United contends that the only difference between the facts of *Victory Carriers* and the facts of the case at bar is the ownership of the injury-causing equipment; in the former case the stevedore was the owner; in the instant action, the vessel owner also owns the trailer frame. This distinction, argues United, cannot be relevant to the issue of jurisdiction, which, according to *Victory Carriers,* depends on the *place* of the injury. Original defendant argues accordingly that the holding in *Victory Carriers* mandates the application of Pennsylvania law to the third party complaint, and accordingly precludes application of the provisions of the LHWCA.

We do not agree that the issue is quite so simple. The holding in *Victory Carriers* must be read in light of the effect the 1972 amendments to the LHWCA had upon the state of the decisional law which was extant at the time of those amendments.

The holding in *Victory Carriers* was based quite specifically upon the reluctance of the Court to break with precedent and "extend shoreward the reach of the maritime law further than *Congress has approved*". 404 U.S. at 211, 92 S.Ct. at 425 (emphasis supplied). Recognizing

---

**2.** The disposition of this motion makes it unnecessary to consider the effect which the application of Pennsylvania law would have upon the merits of the dispute.

that "[c]laims like these are best presented in the legislative forum," *id.* at 216, 92 S.Ct. at 427, the Court invited Congress to provide a remedy if it so wished:

> Congress might well prefer not to extend the jurisdiction of the federal courts. On the other hand, if denying federal remedies to longshoremen injured on land is intolerable, Congress has ample power under Arts. I and III of the Constitution to enact a suitable solution.

*Id. See also Nacirema Operating Co. v. Johnson,* 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969).

When the LHWCA was amended in 1972, Congress specifically addressed this problem;[3] Section 902(4), defining an "employer" under the Act, was revised to read:

> The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (*including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel*). (Emphasis supplied).

■ The legislative history of these amendments illuminates the Congressional intent to extend the reach of the LHWCA to a longshoreman's land-based injury. In H.R. No. 92–1441, 3 U.S.Code Cong. & Admin.News 1972, pp. 4707–08 the Committee stated:

> The present Act . . . covers only injuries which occur "upon the navigable waters of the United States." Thus, coverage . . . stops at the water's edge; injuries occurring on land are covered by State Workmen's

Compensation laws. . . . The Committee believes that the compensation payable to a longshoreman . . should not depend on the fortuitous circumstance of whether the injury occurred on land or over water.

*See Avvento v. Hellenic Lines, Ltd.,* 1975 A.M.C. 153 (Ben.Rev.Bd.1974); *Coppolino v. International Terminal Operating Co.,* 1974 A.M.C. 2422 (Ben.Rev.Bd.1974).

We believe this authority supports the contention of third-party defendant that the 1972 amendments to the LHWCA have effectively eviscerated *Victory Carriers* and its progeny.

A final argument of original defendant in support of the application of state law to this controversy should be addressed. United contends that in light of the fact that plaintiff has brought his complaint under the theory of common law negligence, with the sole basis for federal jurisdiction resting upon the diverse citizenship of the original parties, we may not apply a different basis for jurisdiction in adjudication of the complaint brought by original defendant against a third party. Therefore, argues United, maritime jurisdiction does not exist and we must, pursuant to the exercise of diversity jurisdiction, apply the controlling state law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

We cannot agree with this contention. Rule 14 of the Federal Rules of Civil Procedure, which governs third-party practice, provides in relevant part:

> (a) At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. . . . The third-party com-

---

3. The purpose of the 1972 amendments is succinctly summarized by *Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.B.H. & Co.,* 379 F.Supp. 759, 765 (E.D.Pa.1974), decided by a three judge panel of this Court:

> The 1972 Amendments to the Act dealt with four considerations: (1) the level of benefits

provided, (2) the extension of the Act's coverage to additional workers, (3) the provision for third-party suits against persons other than the employer, and (4) administrative matters.

plaint, *if within the admiralty and maritime jurisdiction,* may be in rem against a vessel, cargo, or other property subject to admiralty or maritime process in rem . . . . (emphasis supplied).

 Even a cursory reading of this Rule makes it clear that it contemplates the independent application of maritime law to a third-party claim brought under those auspices; the jurisdictional basis of the *original* complaint does not control.

 Accordingly, we find that the terms and provisions of the LHWCA apply to the third-party action. The crux of this matter is the effect of those provisions.

### B. *The Insulation of the Stevedore from Suit by the Vessel Owner*

Third-party defendant contends that under the clear language of § 905(b), note 1 *supra,* the stevedore as third party cannot be liable to the vessel for damages in an action based on negligence brought by an employee longshoreman against that vessel. This interpretation of § 905(b) is supported by the decision of a three judge panel of this Court in the case of *Lucas v. "Brinknes" Schiffahrts Ges.,* note 3 *supra* ; while we recognize that we are not bound by the decision in *Lucas,* we agree with that analysis as to the effect of the 1972 amendment to § 905(b) in connection with third-party actions against the stevedore. We thus rely upon the finding in *Lucas* that "Congress intended to insulate the employer from any liability . . . to the vessel for the vessel's negligence." 379 F.Supp. at 768. *See Cooper Stevedoring Co. v. Kopke,* 417 U.S. 106, 113 n. 6, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). Therefore, if this action does allege negligence against the vessel, the third-party suit must be dismissed.

United argues, however, that the primary suit does not allege negligence against the *vessel,* but rather against the *vessel owner,* and that the two are not synonymous within the terms of the LHWCA in general and § 905(b) in particular. Section 902(21) defines "vessel" as follows:

> The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, *and said vessel's owner,* owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member. (emphasis supplied).

United emphasizes the point that "vessel" and "vessel owner" are not stated in the alternative. They claim the insulation from third-party suit provided by § 905(b) extends to the "vessel"; it does not, contends United, extend to the "vessel owner". In this case the "vessel" is not involved because the accident was caused by a trailer frame which, while owned by the *vessel owner,* was neither a part of nor connected to the "American Alliance". Plaintiff has not sued the *vessel* ; he has sued the *vessel owner.* United argues that under these circumstances the *vessel owner* is free to proceed against the stevedore employer, and § 905(b) is not applicable.

 The determination of this issue rests upon the construction of the word "and" as it appears in § 902(21). We believe that United's position on this subject is untenable; we think it clear that the word "and" must be given the meaning "and also", and therefore the word "vessel" *includes* in its definition the *vessel owner, operator,* and others designated in § 902(21). This position is supported by the legislative history of the 1972 amendments; in H.R. No. 92-1441, 3 U.S.Code Cong. & Admin.News 1972, p. 4719, the Committee states:

> Vessel would be defined as any vessel upon which or in connection with which any person entitled to benefits suffers injury *and including the vessel owner and others responsible for the operation of the vessel.* (emphasis supplied.)

 Despite the fact that this accident occurred on shore, it is clear that Con-

gress intended the benefits and burdens of the LHWCA to apply to it. Third-party defendant has accepted the burden of compensating its injured employee; it should not be denied the benefit of protection from third-party suit by the vessel owner.

Treating this matter as a motion for summary judgment by third-party defendant, the motion will be granted and the action against third-party defendant will be dismissed. An appropriate Order will be entered.