LOTTINGER, Judge.
This maritime personal injury suit filed in state court pursuant to the “Saving To Suitors” clause of 28 U.S.C. § 1333(1) has been remanded to this court by the Louisiana Supreme Court for reconsideration and decision in light of our constitutional authority to review the law and the facts. Article 5, § 10(B) La. Const.
FACTS
Suit was filed by Robert S. Daigle, his wife and four children against Coastal Marine, Incorporated (Coastal), Union Oil Company of California (Union), Transworld Drilling Company (Transworld), and the M/V C/SOVEREIGN in rem.[1] Home Insurance Company intervened seeking return of worker’s compensation benefits and medical expenses paid to and on behalf of Robert S. Daigle as the compensation insurer of Daigle’s employer.
The plaintiff, Robert S. Daigle, was employed by Heitman Oilfield Supply Co., Inc., on March 20, 1982, the date of the accident. Heitman builds and manufactures drilling mud monitoring equipment, which warns of a possible blow out on an oil rig. Daigle was employed by Heitman to go to the rigs and install and pick up the equipment. His mission on the day of the accident was to off-load Heitman equipment onto Transworld 64, a Union rig out of Intracoastal City, Louisiana. His transportation to the rig was the M/V C/SOVEREIGN owned by Coastal. This was Dai-gle’s first trip aboard the C/SOVEREIGN and the first time he made the 12 hour run to Rig 64. The captain of the vessel was Otis Hebert, who was employed by Coastal. Captain Hebert’s wife was also aboard the vessel. The C/SOVEREIGN is a 100 foot *825 crew boat with quarters for passengers on the main deck and bunks on a lower deck.
The vessel left the dock at 4 o’clock A.M., and the accident happened late that afternoon about 12 hours later some 90 miles offshore. The plaintiff testified that the seas were getting rough, and he decided to go downstairs to lie down because he was feeling sea-sick. To go down to the bunks, the plaintiff used a stairway located to the rear of the C/SOVEREIGN. As he went down the stairway, he fell and injured his back. The plaintiff testified he slipped because it was dark at the bottom of the stairs, the seas were rough, and his left foot slipped out from under, him.
TRIAL COURT
A jury returned a special verdict finding Daigle 60% at fault, Coastal 10% at fault, and unknown or absent persons or corporations 30% at fault. Additionally, the jury found the total amount of damages suffered by Daigle, without making any reduction for his sub-standard conduct, was $250,832.
Prior to trial, the trial court ruled it would allow the use of prior claims evidence for impeachment purposes. After the trial, but prior to submission of the case to the jury, the trial court granted a directed verdict in favor of Union.
After the return of the special verdict, the trial judge ruled Coastal liable for the 30% of fault attributable to the unknown or absent parties in addition to its own 10% of fault, recognized the intervention of Home Insurance Company, and ultimately awarded Daigle the sum of $100,334, as reduced by plaintiff’s percentage of fault.
ORIGINAL APPEAL
In the original appeal to this court, which is reported at 482 So.2d 749 (La.App. 1st Cir.1985), we held that the trial court was correct in its granting of the directed verdict in favor of Union but in error in its allowing of prior claims evidence. We further held that our review role was limited to either accepting or rejecting the jury verdict without the benefit of amending the verdict. Because of our determination that the prior claims evidence was prejudicial, we remanded for a new trial.
SUPREME COURT ACTION
In Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986), the Supreme Court held this court was in error as to the determination of the scope of appellate review, and thus remanded to this court for a decision on the appeal.
ASSIGNMENTS OF ERROR
In appealing, Coastal argues that the trial court erred in ruling that Coastal was responsible for the fault of absent tort-feasors.
Plaintiff answered the appeal contending the trial court erred:
1) in allowing the defendant, over the objection of the plaintiff, to introduce evidence of prior claims made by the plaintiff which evidence seriously prejudiced the plaintiff and caused the jury to disbelieve the plaintiff’s complaints of pain and suffering in his version of the accident;
2) in assessing the percentage of fault to plaintiff;
3) in the amount of the award of damages; and
4) in granting a directed verdict in favor of Union.
I
In contending that the trial court erred in holding Coastal liable for the fault attributable to unknown or absent parties, Coastal admits that general maritime law governs maritime occurrences and that state law must yield to the uniformity of the maritime law. However, Coastal contends that this limitation does not rule out the possi-bilty of the application of state law in certain instances citing United States v. Reliable Transfer Company, Inc., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) and Cooper Stevedoring Company, Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) as examples *826 where federal jurisprudence concluded maritime law recognizes the doctrine of contribution and apportionment of damages. In addition Coastal cites Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir.1979). Coastal concludes that in the absence of a definitive expression of federal maritime law on the subject, La. C.C. art. 2324 as interpreted by this court in Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir. 1984) controls.
Initially we note that Leger is not applicable because the question before the court was whether the dollar amount of an award against multiple tortfeasors should be reduced by the dollar amount received by plaintiff in settling with certain defendants, and whether judgment should be rendered against a remaining defendant for the amount of fault attributable to those defendants who previously settled.
In its remand to this court, the Supreme Court, at 488 So.2d 681, very conveniently pointed out in a footnote in mentioning this issue:
This issue is pretermitted for decision by the court of appeal on remand, but see Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521, reh. den. 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979), where footnote 8 states in pertinent part: “A tortfeasor is not relieved of liability for the entire harm he caused just because another’s negligence was also a factor in effecting the injury. ‘Nor or the damages against him diminished.’ ” 443 U.S. at 260, 99 S.Ct. at 2756, 61 L.Ed.2d at 527.
Thus we conclude that the issue as far as federal maritime law is concerned is settled and that one of several tortfeasors can be held liable for that portion of fault attributable to another tortfeasor even when a tortfeasor’s portion of fault is less than that of the plaintiff.
II
We reaffirm the opinion of this court as to the prior claims evidence as reported in our original opinion.
Ill
We agree with plaintiff that the jury was manifestly erroneous and clearly wrong in assessing 60% of fault against plaintiff.
The plaintiff had never been aboard the C/SOVEREIGN before the day of the accident. Plaintiff’s expert, Arthur Sargent, a naval architect and marine engineer who inspected the vessel, described the stairway in question as unusual in its positioning “athwartship,” meaning it ran across the vessel port to starboard, rather than fore to aft. This unusual positioning resulted in an abnormal increase and decrease in the angle of the stairway as it reacted to the rise and fall of the sea. Stairways are normally 40 to 50 degrees in incline, whereas this stairway was 64 degrees. Thus when the vessel rolled 10 degrees the incline of the stairway increased to 74 degrees and the stairs or treads sloped 10 degrees. A roll greater than 10 degrees caused a proportionate increase in the stairway incline and tread slope.
In addition to the steepness of the incline, the expert also opined that the lighting available was only minimal. Additionally, one handrail w;as available, whereas because of the steep incline two handrails should have been utilized.
It occurs to this court that passengers on vessels will on occasion become nauseated in relatively calm, much less, rough seas, and will seek relief such as going below deck to lie down. This occurred to this plaintiff, and he sought relief by going below deck. However, he was not forewarned of any design defect in the stairway.
However, we do not find plaintiff to be free from fault. Daigle had previously been a deckhand on similar vessels. He had climbed steps at sea and was familiar with the difficulty of rough water. A prudent man would have noticed the steepiness of this stairway and approached it with greater caution, at least to the extent *827 of backing down the stairway rather than proceeding face first. Better lighting should have been available, and a second handrail would have helped in the negotiation of such a steep stairway. Thus we conclude that 20% fault should be attributable to plaintiff, 45% to Coastal and 35% to the absent parties.
IV
Plaintiff argues that the jury abused its discretion in its award of damages.
The tortfeasor takes his victim as he finds him and is responsible for all the natural and reasonable consequences of his act, even though the consequences of the. act are made more serious or harmful by reason of a pre-existing defect or weakness of the victim.
This record points out that plaintiff had a number of back problems. In 1973 he was injured and was operated on for raptures of the two lowermost disks in his back and part of the L-4 and L-5 disks were removed. In 1978 he was operated on again and fusions done in L-4 and L~5. In 1979 another operation was performed. In 1981 a number of nerve blocks were done all in the L-4 and L-5 area of the fusion. All of this was prior to the present accident. He was released to work in June 1981. He returned to Dr. Rayburn C. Llewellyn, a neurological surgeon, on April 5, 1982, (post-accident) with back pain, right leg pain, numbness and weakness affecting the right foot. Dr. Llewellyn found an irreparable tear at L-3/L-4 disk space, which is right above the old disk injury, and bladder problems. He was operated on again. The bone elements were removed in this sixth operation. Dr. Llewellyn was of the opinion that he would have to continue to wear a foot and back brace and that his condition would not improve. The doctor further testified that the plaintiff was again unstable and that the sixth operation revealed that he had a torn joint above the fused segment which will require him to wear, on a permanent basis, his braces and supports. The doctor concluded by finding the plaintiff to be permanently and totally disabled.
The plaintiff will need medication for pain, muscle relaxants, and medications for retention and nervousness; will need to be seen three or four times a year by a physician to substantiate medications prescribed as well as to prevent a tolerance buildup; and will need a new foot and back brace each year. Daigle was 31 years of age at the time of the accident with a life expectancy of 34.63 years. La.R.S. 47:2405.
Dr. Seymore Goodman, plaintiff’s economic expert, testified that plaintiff had a work life expectancy of 26.1 years. At the time of the accident plaintiff earned $1,600 per month after taxes. The expert estimated that the present value of plaintiffs future loss of wages was $362,123. If plaintiff returned to any type of job making minimum wages, the expert concluded that the loss of future wages would be $227,922. The trial court awarded a total of $250,832, which in the opinion of this court constitutes an abuse of discretion. We conclude that the minimum that the jury should have awarded this plaintiff prior to any reduction for his own fault is $385,000, composed of $200,000 for pain and suffering, $35,000 for future medical expenses, and $150,000 for future loss of wages. This award reduced by plaintiff’s percentage of fault amounts to $308,000.
V
Plaintiff contends the trial court erred in granting a directed verdict in favor of Union.
In the original opinion of this court, 482 So.2d 749 at 751, we discussed the issue of the directed verdict. In addition to what was said in that opinion, we note that the charter agreement was placed into evidence and it specifically provides that “the operation, navigation and management of the VESSEL shall be under the exclusive control and command of OWNER and its servants, master, and crew.” The charter agreement makes clear that this was a time charter. Thus, we find no error on the part of the trial judge in directing a verdict in favor of Union.
*828 Therefore, for the above and foregoing reasons, the judgment of the trial court is amended, as is set out in detail below, and as amended is affirmed. The costs of this appeal are assessed to Coastal.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:
(1) The claims of all plaintiffs against Union Oil Company are hereby dismissed pursuant to a directed verdict granted by the Trial Court on Saturday, March 3,1984, prior to submission of the case to the jury.
(2) Coastal Marine, Inc. is guilty of substandard conduct which was a proximate cause of the plaintiffs’ injuries, and the percentage of fault attributable to Coastal Marine, Inc., when compared to the fault of all responsible persons and parties is 45 percent.
(3) Absent persons, not made parties to the lawsuit, were guilty of substandard conduct which was a proximate cause of the plaintiffs’ injuries and the percentage of fault attributable to those absent persons is 35 percent.
(4) The plaintiff, Robert Daigle, was guilty of substandard conduct which was a proximate cause of the injuries and damages suffered by the plaintiffs, and the percentage of fault attributable to Robert Daigle is 20 percent.
(5) Coastal Marine is responsible unto plaintiff, Robert Daigle, for the thirty-five (35%) percent fault assessed against absent persons.
(6) The total amount of damages unreduced by the fault of Robert. Daigle is THREE HUNDRED EIGHTY-FIVE THOUSAND (385,000.00) AND NO/100 DOLLARS.
(7) The claim of intervenor, Home Insurance Company is recognized, pursuant to the stipulation between the parties.
(8) Coastal Marine, Inc., is ordered to pay THREE HUNDRED EIGHT THOUSAND ($308,000.00) AND NO/100 DOLLARS (80 percent of the damages awarded) plus legal interest from the date of judicial demand as damages in this case to plaintiff, Robert Daigle.
(9)Costs are to be allocated in accordance with the percentages of fault assessed by this court, with the exception that the defendant, Coastal Marine, Inc., is ordered to pay the percentage of costs allocated to the responsible absent parties.
AMENDED AND AFFIRMED.

. The claims of plaintiff’s wife and children for loss of consortium were abandoned during the jury charge conference.