Argued and submitted April 16, affirmed August 4, 1980

WHEELER,
*Plaintiff,*
*v.*
BONNIN, et al,
*Defendant - Third Party Plaintiffs, Appellants.*
*v.*
HEFFELFINGER,
*Third Party Defendant, Respondent.*
(A7612 17478, CA 14620)
615 P2d 355

[645]

Richard Wm. Davis, Portland, argued the cause for appellants. With him on the briefs was Lindsay, Nahstoll, Hart, Neil & Weigler, Portland.

Katherine H. O'Neil, Portland, argued the cause for respondent. With her on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, Marck H. Wagner, and Ridgway K. Foley, Jr., Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

In the context of a wrongful death action brought against the owners and operators of two boats, defendants/third-party plaintiffs bring this claim for contribution against the other defendant. Third-party plaintiffs appeal from an order of the trial court allowing third-party defendant's motion for summary judgment and dismissing the claim for contribution. We affirm.

Plaintiff is the personal representative of decedent, who was a passenger in the pleasure craft of defendant/third-party defendant in December, 1974, when it collided with a tugboat on the navigable waters of the Willamette River in the vicinity of the Steel Bridge in Portland. The tugboat was owned and operated by defendants/third-party plaintiffs. In the amended complaint filed in April, 1978, plaintiff alleged:

> "At said time and place the defendants, individually and severally, carelessly and negligently operated their vessels so that the vessels collided and the said collision and the negligence of the defendants and each of them was the proximate cause of the death of decedent * * *."

In July, 1978, the court approved a settlement agreement between plaintiff and defendant/third-party defendant, whereby plaintiff received $37,500 in settlement and executed a covenant not to sue defendant/third-party defendant. Notice was given to third-party plaintiffs of the settlement. ORS 18.455(2). In August, 1978, third-party plaintiffs brought their claim for contribution. In November, 1978, they also settled with plaintiff in the main action for wrongful death, for $82,500. In January, 1979, third-party defendant filed a motion for summary judgment on the contribution claim on the ground that ORS

18.450(4)[1] and ORS 18.455[2] foreclosed the claim for contribution.

The trial court granted the motion for summary judgment without indicating upon which statutory provision it relied. Third-party plaintiffs concede that their claim is barred if state law applies. They contend that neither provision can defeat their federal maritime right to recover contribution and to have their liability apportioned according to their relative fault. Our inquiry is limited to whether ORS 18.455, foreclosing contribution from a joint tortfeasor who has settled and obtained a covenant not to sue from plaintiff, can be properly applied in an action for wrongful death cognizable under maritime law.[3] We

---

[1] ORS 18.450(4) provides:

"(4) If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has either:

"(a) Discharged by payment the common liability within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within two years after payment; or

"(b) Agreed while action is pending against him to discharge the common liability and has within two years after the agreement paid the liability and commenced his action for contribution."

[2] ORS 18.455 provides:

"(1) When a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death or claimed to be liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

"(2) When a covenant described in subsection (1) of this section is given, the claimant shall give notice of all of the terms of the covenant to all persons against whom he makes claims."

[3] The disposition of this case makes it unnecessary to discuss the applicability of ORS 18.450(4).

[648]

conclude that ORS 18.455 operates to defeat the claim for contribution.

■ ■ Plaintiff's cause of action is cognizable under both the Oregon Wrongful Death Act, ORS 30.010 *et seq.,* and the federal remedy of a maritime wrongful death action, created in *Moragne v. States Marine Lines, Inc.,* 398 US 375, 409, 90 S Ct 1772, 1792, 26 L Ed 2d 339 (1970). There is concurrent jurisdiction of maritime wrongful death actions in state and federal courts. Section 9 of the Judiciary Act of 1789, 28 U.S.C., § 1333, the so-called "saving clause" of the admiralty statute, gives original jurisdiction of admiralty matters to federal district courts, "saving to suitors in all cases all other remedies to which they are otherwise entitled." But the law to be applied to a cause of action cognizable in maritime law is maritime law. *Kermarec v. Transatlantique,* 358 US 625, 627, 79 S Ct 406, 408, 3 L Ed 2d 550 (1959).

■ Although maritime law controls, it can be supplemented by state law:

"It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope. State-created liens are enforced in admiralty. State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action. Federal courts have enforced these statutes. State rules for the partition and sale of ships, state laws governing the specific performance of arbitration agreements, state laws regulating the effect of a breach of warranty under contracts of maritime insurance — all these laws and others have been accepted as rules of decision in admiralty cases, even, at times, when they conflicted with a rule of maritime law which did not require uniformity. 'In the field of maritime contracts,' this Court has said, 'as in that of maritime torts, the National Government has left much regulatory power in the States.' Thus, if one

thing is clear it is that the source of law in saving-clause actions cannot be described in absolute terms. Maritime law is not a monistic system. The State and Federal Governments jointly exert regulatory powers today as they have played joint roles in the development of maritime law throughout our history." *Romero v. International Term. Operat. Co.,* 358 US 354, 373, 79 S Ct 468, 481, 3 L Ed 2d 368 (1959).

Application of state law to maritime cases is subject to the limitation expressed in *Southern P. Co. v. Jensen,* 244 US 205, 216, 37 S Ct 524, 529, 61 L Ed 1086 (1917):

"And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

*See also, Askew v. American Waterways Operators,* 411 US 325, 341-44, 93 S Ct 1590, 1600-01, 36 L Ed 2d 280, *reh den,* 412 US 933, 93 S Ct 2746, 37 L Ed 2d 162 (1973)(State act governing sea-to-shore pollution not in "clear conflict" with federal law).

■  The effect of application in this case of ORS 18.455, *supra,* n. 2, would be to eliminate third-party plaintiffs' claim for contribution against the joint tortfeasor, who has obtained a covenant not to sue from plaintiff. There is no dispute that there is a general remedy of contribution available in maritime cases, including non-collision cases, to apportion liability according to fault. *United States v. Reliable Transfer Co., Inc.,* 421 US 397, 411, 95 S Ct 1708, 44 L Ed 2d 251 (1975); *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.,* 417 US 106, 113, 94 S Ct 2174, 2178, 40 L Ed 2d 694 (1974).

■  Third-party plaintiffs contend that they have an absolute right to contribution and that the state statute cannot be applied to defeat that right. To

bolster their point, third-party plaintiffs refer to *Weyerhaeuser S.S. Co. v. United States,* 372 US 597, 603, 83 S Ct 926, 930, 10 L Ed 2d 1 (1963). Reliance on *Weyerhaeuser* is misplaced. That case did not hold that the remedy of contribution cannot be eliminated in maritime cases. It held instead that the Federal Employees' Compensation Act (FECA), 5 USC § 751 *et. seq., did not* affect contribution between colliding vessels. The FECA provided that the liability of the United States under the Act for

"*\* \* \** injury or death of an employee shall be exclusive, and in place, of all other liability of the United States or such instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and *anyone otherwise entitled to recover damages from the United States \* \* \** on account of such injury or death \* \* \*." (Emphasis supplied.)

The court held that this language was intended to limit the right of the employe or his representative, against the United States, as an employer, to the benefits of the FECA. The language "and anyone otherwise entitled to recover damages from the United States" did not affect a third-party/joint tortfeasor's general remedy of contribution from the United States for a collision between vessels which caused the workmen's injury. 372 US at 601, 83 S Ct at 928, 10 L Ed 2d at 5. Unlike the FECA, ORS 18.455 is clearly intended to affect the rights of joint tortfeasors with respect to the right to recover contribution after a prior release.

■     Third-party plaintiffs also cite dictum in *Pope & Talbot, Inc. v. Hawn,* 346 US 406, 410, 74 S Ct 202, 205, 98 L Ed 143 (1953), an action for damages for personal injuries in which the federal rule of comparative negligence was held to apply:

"While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of this Court. These principles have been frequently declared and we adhere to them. *See e. g.,*

*Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 243-246, 63 S.Ct. 246, 249-251, 87 L.Ed. 239, and cases there cited. *Caldarola v. Eckert,* 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, does not support the contention that a state which undertakes to enforce federally created maritime rights can dilute claims fashioned by federal power, which is dominant in this field."

Reliance on the broad language in *Pope & Talbot* begs the underlying question: whether a substantial maritime right is curtailed here by operation of ORS 18.455. Third-party plaintiffs claim that contribution is a substantial maritime right in and of itself, but we think that the right to which they are entitled, as defined by the U. S. Supreme Court, is that of having their liability apportioned according to relative fault. *United States v. Reliable Transfer Co., Inc., supra,* 421 US at 411, 95 S Ct at 1715.

■ There is no clear federal policy on the effect of a settlement, or covenant not to sue, on the availability of the remedy of contribution. Third-party plaintiffs cite to us no federal case holding that the remedy of contribution necessarily prevails over such a release. In the absence of a uniform maritime rule concerning the effect of a prior settlement and release on the right to contribution by a joint tortfeasor, we see no conflict in applying ORS 18.455 to this case. *See Frueh v. Kupper,* 54 NJ Super 296, 306, 148 A 2d 743 (1959)(a void in federal maritime law properly supplemented with state joint tortfeasors act).

■ That there is no such uniform rule is indicated by two recent federal maritime cases which discuss the effect of prior settlement on the availability of contribution. *See Leger v. Drilling Well Control, Inc.,* 592 F2d 1246, 1249-50 (5th Cir 1979); *Doyle v. United States,* 441 F Supp 701, 710, n 5. In *Doyle,* the court stated:

"This court is of the opinion that the 'reduce by proportional fault' theory commends itself partic-

ularly in admiralty jurisprudence with its comparative fault doctrine. Since the decisions in *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953) and *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), it has been settled law that a party to a maritime collision should bear only the proportional share of damages attributable to his fault. Under the 'reduce by amount paid' theory, a non-settling defendant could end up paying more than *Reliable Transfer* dictates (such as here where the defendants have eliminated contribution by dismissing their cross claims with prejudice). The better rule, this court feels, is to respect the aleatory nature of the settlement process and to hold both the plaintiff and settling defendant to their gamble. The plaintiff gambles that the amount he receives in settlement plus the amount recoverable from the non-settling defendant will be greater than he could have recovered if he pursued both actions to judgment (i.e., the plaintiff hopes the settling defendant will pay more than what is eventually determined to be his proportional share of the damages). The settling defendant gambles that the amount he pays in settlement is less than he ultimately would be liable to pay, had he gone to judgment. To allow the plaintiff, to, in effect, 'void' this bargain and execute against the non-settling defendant for the entire damage award less the amount actually paid in settlement, *with a right of cross claim preserved against the settling defendant in favor of the non-settling defendant,* runs contrary to logic and to the theory adopted by the Supreme Court in maritime collision cases. *United States v. Reliable Transfer, supra,* at 411, 95 S.Ct. 1708. On this topic generally, *see,* 18 Am.Jur.2d *Contribution* § 52 (1965)." (Emphasis added.)

Under these principles, at least, followed in *Leger v. Drilling Well Control, Inc., supra,* the third-party defendant's prior settlement did not cause third-party plaintiffs to lose the right to have their liability apportioned according to their relative fault. They could have proceeded to trial and had their proportionate liability judicially determined and the damages owed

[653]

plaintiff limited to the percentage of the total verdict that their relative fault bore to the total fault.[4] While ORS 18.455 does eliminate the remedy of contribution against a joint tortfeasor which has settled, it does not prevent a nonsettling party in a maritime case from limiting its liability according to its proportionate fault.

We conclude that application of ORS 18.455 properly supplements maritime law concerning the effect of a prior settlement and release on the right of a joint tortfeasor to recover contribution. In holding that the state provision governs here, we perceive no conflict with or material prejudice to any characteristic feature of maritime law, nor interference with that law's harmony and uniformity. *See Askew v. American Waterways Operators, supra,* 411 US at 343; *cf. Southern P. Co. v. Jensen, supra,* 244 US at 216 (State Workers' Compensation Act held to interfere with uniformity of maritime compensatory law). ORS 18.455 does not contravene what we see as the characteristic feature of maritime law in this context, apportionment of liability according to relative fault.

Affirmed.

---

[4] We suggest that where a settling party is no longer liable to plaintiff for damages or to defendant for contribution, ORS 18.455, but the nonsettling defendant is obligated only to pay his proportional share of the damages, ORS 18.440(2), *United States v. Reliable Transfer Co., Inc., supra,* as ultimately determined by the fact-finder, a procedure should be allowed in the trial which will permit the ascertainment of the percentage of fault of the settling party.