Shauna CARPENTER and Dennis
Bailey, Plaintiffs,

v.

UNITED STATES of America; Nevada
Power Company, a Nevada Corpora-
tion; Coast Catamaran Corp., a Cali-
fornia Corporation; Coleman Compa-
ny, Inc., a Kansas Corporation; and
Does I–V, inclusive, Defendants.

COAST CATAMARAN CORPORATION,
a California Corporation; and Coleman
Company, Inc., a Kansas Corporation,
Defendants/Third–Party Plaintiffs,

v.

CALLVILLE BAY RESORT & MARINA,
INC., Del Webb Recreational Proper-
ties, Inc., Third–Party Defendants.

NEVADA POWER COMPANY,
Defendant/Third–Party
Plaintiff,

v.

CALLVILLE BAY RESORT & MARINA,
INC., Del Webb Recreational Proper-
ties, Inc., Third–Party Defendants.

UNITED STATES of America,
Defendant/Third–Party
Plaintiff,

v.

CALLVILLE BAY RESORT & MARINA,
INC., Del Webb Recreational Proper-
ties, Inc., Third–Party Defendants.

No. CV–S–82–208–PMP.

United States District Court,
D. Nevada.

July 13, 1988.

Thomas W. Biggar, Biggar & Shulman, Las Vegas, Nev., for plaintiffs Shauna Carpenter and Dennis Bailey.

Paul G. Sterling, Torts Branch, Civ. Div., San Francisco, Cal., for defendant/third-party plaintiff U.S.

Bruce R. Laxalt and Greg W. Marsh, Las Vegas, Nev., for defendant/third-party plaintiff Nevada Power Co.

Bruce Alverson and David Mortensen, Las Vegas, Nev., and Walt Millar, San Marcos, Cal., for defendant/third-party plaintiff Coast Catamaran Corp. and Coleman Co., Inc.

Richard Desruisseaux and Patrick Murphy, Rawlings, Olson & Cannon, Las Vegas, Nev., for third-party defendants Callville Bay Resort & Marina, Inc. and Del Webb Recreational Properties, Inc.

## ORDER

PRO, District Judge.

## FACTS

On April 20, 1980, David Alward, SHAUNA CARPENTER and DENNIS BAILEY rented a sailboat from CALLVILLE BAY RESORT AND MARINA, INC. and DEL WEBB RECREATIONAL PROPERTIES, INC. (CALLVILLE and DEL WEBB). The vessel was a 1980, 16–foot Hobie Cat sailboat with a 27–foot aluminum mast. The vessel was designed, manufactured and distributed by COAST CATAMARAN CORPORATION and COLEMAN COMPANY, INC. (COAST and COLEMAN). While navigating the vessel at the Lake Mead National Recreation area, Plaintiffs sustained personal injuries and damages when the sailboat mast came into contact with an overhead power line which was owned and maintained by NEVADA POWER COMPANY.

On November 26, 1980, Third–Party Defendants CALLVILLE and DEL WEBB filed a petition for limitation of liability pursuant to 46 U.S.C.App. §§ 183–185 (See exhibit B, attached to # 209).

On January 13, 1982, and January 15, 1982, after settlement negotiations, Third–Party Defendants CALLVILLE and DEL WEBB obtained full releases from Plaintiffs SHAUNA CARPENTER and DENNIS BAILEY, respectively, for a total amount of twenty-five thousand dollars ($25,000.00). On February 8, 1982, a Stipulation and Order of Dismissal was submitted to and signed by Judge Harry Claiborne (See exhibit B, attached to # 126).

On April 8, 1982, Plaintiffs CARPENTER and BAILEY filed a Complaint against Defendants UNITED STATES OF AMERICA, NEVADA POWER COMPANY, and COAST CATAMARAN CORPORATION (# 1). On July 23, 1984, Plaintiffs' Complaint was amended to include Defendant COLEMAN COMPANY, INC. (# 53). On June 27, 1986, Defendants COAST and COLEMAN filed a Third–Party Complaint against CALLVILLE and DEL WEBB (# 110). Additional Third–Party Complaints were subsequently filed by NEVADA POWER on July 1, 1986 (# 113), and by the UNITED STATES on December 3, 1986 (# 176).

On July 22, 1986, Third–Party Defendants CALLVILLE and DEL WEBB filed a Motion to Dismiss (# 126). On September 24, 1986, the Honorable Roger D. Foley entered an Order denying this Motion Without Prejudice (# 154).

On October 15, 1986, a settlement conference was held and all Defendants subsequently settled with Plaintiffs. NEVADA POWER paid a total amount of one hundred eighty-five thousand dollars ($185,000.00); the UNITED STATES paid a total amount of sixty-five thousand dollars ($65,000.00); and COAST and COLEMAN jointly paid a total amount of fifty thousand dollars ($50,000.00). On January 7, 1987, upon Stipulation of the parties, an Order was entered dismissing this matter, with the exception of the Third–Party Complaints against CALLVILLE and DEL WEBB (# 181).

Now before the Court is Third–Party Defendants CALLVILLE and DEL WEBB's

Motion for Summary Judgment, filed on January 22, 1988 (# 205). Defendant/Third–Party Plaintiffs COAST and COLEMAN, NEVADA POWER and the UNITED STATES filed their Oppositions to this Motion on February 18, 1988 (# 209, # 210 and # 211). CALLVILLE and DEL WEBB filed their Reply on March 7, 1988 (# 213).

The Third–Party Complaints basically allege that the Plaintiffs' damages were caused or contributed to by the active and primary negligence, fault and breach of duty of Third–Party Defendants CALLVILLE and DEL WEBB. Third–Party Plaintiffs therefore allege that CALLVILLE and DEL WEBB are liable to them for the amount paid in favor of Plaintiffs, or for an appropriate portion thereof as may be determined by the Court, whether by way of indemnity or contribution recovery or otherwise.

By their Motion for Summary Judgment, Third–Party Defendants CALLVILLE and DEL WEBB state that they have settled with and been released by the Plaintiffs from liability, therefore they are not responsible to the Third–Party Plaintiffs for liability arising by way of contribution. Third–Party Defendants further allege that the complaining Third–Party Plaintiffs are not entitled to indemnity as a matter of law.

Third–Party Plaintiff UNITED STATES adopts and joins in COAST and COLEMAN's Opposition to Third–Party Defendants' Motion for Summary Judgment (hereinafter referred to as COAST and COLEMAN, but understood to also include the UNITED STATES). By this Opposition, they allege that this case is not governed by Nevada law, but falls within the Federal Court's Admiralty Jurisdiction. They further argue that there are genuine issues of material fact concerning: (1) whether the amount of CALLVILLE and DEL WEBB's settlement was so disproportionate to their share of comparative liability that it violated the requirements of a good faith settlement; (2) whether the Limitation of Liability statute, 46 U.S.C. App. § 183, has any application to the fac-

tual circumstances of Plaintiffs' accident; and (3) whether admiralty law recognizes a right to indemnity as between active and passive tortfeasors.

In its Opposition to the Motion for Summary Judgment, Third–Party Plaintiff NEVADA POWER focuses on the issue of whether the settlement between Third–Party Defendants and Plaintiffs was a good faith settlement, and argues that it is entitled to indemnity from CALLVILLE and DEL WEBB.

In Reply to these Oppositions, CALLVILLE and DEL WEBB argue: (1) that they have contributed their proportionate share under the law and the circumstances of this case; (2) that Third–Party Plaintiffs have not raised a sufficient genuine issue of fact concerning the good faith of the settlement to preclude summary judgment; (3) that Third–Party Plaintiffs have no right of indemnity as a matter of law; (4) that insofar as admiralty law is silent on this issue, Federal Courts in admiralty have used the Uniform Contribution Among Tortfeasors Act; and (5) that a dispute concerning whether the Limitation of Liability Act is applicable does not create a genuine issue of material fact, but only reinforces the position and decision of the attorneys who negotiated the settlement.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982). However, this does not require that the moving party support its motion with affidavits or other similar material negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the non-movant to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986); *Richards v. Neilsen Freight Lines,* 810 F.2d 898 (9th Cir.1987).

"A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). All facts and inferences drawn must be viewed in the light most favorable to the non-moving party, when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *State of Idaho v. Hodel,* 814 F.2d 1288 (9th Cir. 1987).

Third–Party Plaintiffs COAST and COLEMAN allege that this case falls within the Court's admiralty jurisdiction.

To invoke the federal admiralty jurisdiction in tort cases, the tort must occur on navigable waters and bear a "significant relationship to traditional maritime activity." *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 672–75, 102 S.Ct. 2654, 2656–58, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). *Complaint of Paradise Holdings, Inc.,* 795 F.2d 756, 759 (9th Cir.1986). Based on these guidelines and the facts of the instant case, it remains questionable whether admiralty jurisdiction is applicable. However, a definitive finding on this issue is unnecessary to the resolution of the instant motion.

## INDEMNITY

COAST and COLEMAN allege that they are entitled to indemnity from CALL-VILLE and DEL WEBB. In admiralty, the tort concept of indemnity is based on common law principles of active and passive negligence. "The tort indemnity principal applied in maritime cases is that between two joint tortfeasors, the passively or secondarily negligent party may recover indemnity from the actively or primarily negligent party." *Hudson Waterways Corp. v. Coastal Marine Service, Inc.,* 436 F.Supp. 597, 602 (E.D.Tex.1977). See also *White v. Johns Manville Corp.,* 662 F.2d 243 (4th Cir.1981).

The distinction between primary and secondary liability for this purpose is not based on a mere difference in degrees of fault but rather on a "difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370 (1951). *White,* 662 F.2d at 249.

Third–Party Plaintiffs COAST and COLEMAN must show that CALLVILLE and DEL WEBB were the "active" or "primary" cause of the Plaintiffs' injuries. "Where the party seeking indemnification was itself guilty of acts or omissions proximately causing the plaintiff's injury, tort indemnification is inappropriate. *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240, 243 (5th Cir.1977)." *Araujo v. Woods Hole, et al.,* 693 F.2d 1, 3 (1st Cir.1982). A reading of the facts in this case persuades the Court that COAST and COLEMAN and the UNITED STATES cannot be viewed as completely passive parties, guilty of *no* acts or omissions causing injury to the Plaintiffs. Therefore, they do not meet the admiralty requirements for indemnification as between "active" and "passive" tortfeasors.

Third–Party Plaintiff NEVADA POWER also claims a right to indemnity from CALLVILLE and DEL WEBB, but based on Nevada law rather than admiralty principles. See *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir.1964). The same distinction applies to NEVADA POWER as was applied above. This Court does not view NEVADA POWER as a completely "passive" tortfeasor, therefore, it does not meet the requirements for indemnifica-

tion. Furthermore, since NEVADA's adoption of the Uniform Contribution Among Tortfeasors Act, NRS 17.225 et seq., the "active" and "passive" distinction is no longer recognized. "Indemnity is not available in a case involving joint or concurrent tortfeasors having no legal relation to one another, and each owing a duty of care to the injured party." *Central Telephone Co. v. Fixtures Mfg.*, 103 Nev. 298, 738 P.2d 510, 512 (1987).

The Court finds that there are no genuine issues of material fact concerning any of the Third–Party Plaintiffs' rights to indemnity, whether under Nevada law or admiralty law, and that as a matter of law, Third–Party Plaintiffs are not entitled to indemnity.

## CONTRIBUTION

A right to contribution between joint tortfeasors exists under admiralty law. *Cooper Stevedoring Company, Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). The general remedy of contribution available in maritime cases is to apportion liability according to fault. *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975); *Cooper*, 94 S.Ct. at 2178.

■ However, "[t]here is no clear federal policy on the effect of a settlement, or covenant not to sue, on the availability of the remedy of contribution." *Wheeler v. Bonnin*, 47 Or.App. 645, 615 P.2d 355 (1980). See *Doyle v. United States*, 441 F.Supp. 701, 710–13, n. 5, (D.S.C.1977) (contribution between joint tortfeasors in the context of a settlement); *Luke v. Signal Oil & Gas Co.*, 523 F.2d 1190 (5th Cir. 1975); and *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540 (11th Cir.1987).

COAST and COLEMAN allege that a "good faith" settlement defense is not recognized in admiralty, and the defense of "good faith" provided under NRS 17.245 is not available to CALLVILLE and DEL WEBB, since Nevada law is not applicable. However, COAST and COLEMAN acknowledge that under the law of admiralty, state law may be examined by way of analogy.

*Puget Sound Production Credit Association v. Sablefish*, 575 F.Supp. 56 (W.D. Wash.1983).

In *Wheeler*, 615 P.2d at 359, the court stated that "[i]n the absence of a uniform maritime rule concerning the effect of a prior settlement and release on the right to contribution by a joint tortfeasor, we see no conflict in applying ORS 18.455 to this case." ORS 18.455 is an Oregon statute which is similar to NRS 17.245. In the instant case, this Court similarly holds that due to the absence of a uniform maritime rule concerning the effect of a prior release on the right of contribution by a joint tortfeasor, no conflict exists in applying NRS 17.245.

NRS 17.245 provides that when a release is given in good faith, it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor. Therefore, if the release was given to CALLVILLE and DEL WEBB in "good faith," they would be protected from any further liability.

## GOOD FAITH

In determining whether a settlement was made in good faith, "practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal. 3d 488, 213 Cal.Rptr. 256, 698 P.2d 159, 167 (1985).

At the time of settlement, no determination had been made as to whether the limitation of liability statute would apply. 46 U.S.C.App. § 183 provides in pertinent part:

(a) The liability of the owner of any vessel, whether American or foreign, ... for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel....

This section applies to cases of personal injury and death as well as to cases of loss of or injury to property. *Craig v. Continental Ins. Co.*, 141 U.S. 638, 12 S.Ct. 97, 35 L.Ed. 886 (1891). See also *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

There remain several significant issues concerning whether or not this statute would be applicable in the instant case. Third–Party Plaintiffs argue that privity and knowledge of the vessel owners was implicated, therefore CALLVILLE and DEL WEBB would not be entitled to the limitation of liability defense. However, it is not necessary for this Court to make a decision concerning this issue. It is sufficient to find that at the time of settlement, there was apparently some uncertainty as to whether or not this statute would be applicable to CALLVILLE and DEL WEBB.

If this statute were applicable, CALLVILLE and DEL WEBB's liability may have been limited to approximately seven thousand dollars ($7,000.00). The possibility of this limitation must certainly have been on the minds of Plaintiffs and CALLVILLE and DEL WEBB at the time of settlement, and thus should be taken into consideration when determining the good faith of the settlement, based on the dollar amount paid.

The party asserting a lack of good faith has the burden of proof. *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). The factors to consider in assessing whether a settlement was in good faith include: (1) the amount paid, (2) the allocation of the proceeds among the Plaintiffs, (3) the insurance policy limits of settling Defendants, (4) the financial condition of settling Defendants, and (5) the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling Defendants. *In re MGM Grand Hotel Fire Litigation*, 570 F.Supp. 913, 927 (D.Nev.1983). See also *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir. 1981).

In the instant case, none of the parties have mentioned insurance policy limits, or the financial condition of CALLVILLE and DEL WEBB. Additionally, the issue of fraud and collusion were never addressed by legal argument. This Court therefore focuses on the settlement amount paid.

Third–Party Plaintiffs assert that at the time of the settlement with CALLVILLE and DEL WEBB, Plaintiffs had evaluated their claim at one million one hundred thousand dollars ($1,100,000.00). However, at the time of this settlement, Plaintiffs initial demand to CALLVILLE and DEL WEBB was for forty-five thousand dollars ($45,-000.00). This figure is approximately four percent (4%) of the total amount as evaluated by Plaintiffs. It is impossible for this Court to determine exactly what reasoning lay behind the amount requested, and the amount eventually settled upon. However, these figures could be viewed as the perceived percentage of liability owed by CALLVILLE and DEL WEBB, as a reflection of the fact that there may have been a possibility that CALLVILLE and DEL WEBB would be protected by the limitation of liability statute, and may therefore have only been liable for approximately seven thousand dollars ($7,000.00), and also as a reflection of the general benefits of settlement as opposed to trial.

CALLVILLE and DEL WEBB eventually settled with Plaintiffs CARPENTER and BAILEY for a total amount of twenty-five thousand dollars ($25,000.00). This figure is approximately two and one-half percent (2.5%) of Plaintiffs original evaluation of their claim, and fifty-five percent (55%) of the Plaintiffs' original demand of forty-five thousand dollars ($45,000.00).

■ The total amount paid by all Defendants to Plaintiffs CARPENTER and BAILEY was three hundred and twenty-five thousand dollars ($325,000.00). This is approximately thirty percent (30%) of Plaintiffs' original evaluation. CALLVILLE and DEL WEBB's settlement of twenty-five thousand dollars ($25,000.00) was approximately seven and a half percent (7.5%) of the total amount of three hundred and

twenty-five thousand dollars ($325,000.00) paid to Plaintiffs.

Third–Party Plaintiffs' argument basically seems to be that CALLVILLE and DEL WEBB were more than seven and one-half percent (7.5%) liable for the damage to Plaintiffs. They argue that this amount is so disproportionate to CALLVILLE and DEL WEBB's share of liability, that it violates the requirements of a good faith settlement. The Court disagrees.

First, since all Defendants settled, the underlying case never went to trial and no exact percentages of liability were ever determined. Presumably, at the time Third–Party Plaintiffs settled, they were aware of the fact that CALLVILLE and DEL WEBB had already settled with Plaintiffs for twenty-five thousand dollars ($25,-000.00). Therefore, their decision to settle was made with full knowledge beforehand of what percentage CALLVILLE and DEL WEBB had paid.

The "third-party defendant's prior settlement did not cause third-party plaintiffs to lose the right to have their liability apportioned according to their relative fault. They could have proceeded to trial and had their proportionate liability judicially determined and the damages owed plaintiff limited to the percentage of the total verdict that their relative fault bore to the total fault." *Wheeler v. Bonnin*, 47 Or.App. 645, 615 P.2d 355, 360 (1980). Instead, Third–Party Plaintiffs chose to settle and therefore freely negotiated the amount they would pay to Plaintiffs.

Second, in light of the facts and circumstances of the case, this Court is not convinced that CALLVILLE and DEL WEBB bear the greater burden of liability. Certainly none of the parties were blameless. However, it is not the responsibility of this Court to apportion liability, but merely to decide whether the settlement was so disproportionate as to present a question of good faith, thereby raising a genuine issue of material fact.

Third, if CALLVILLE and DEL WEBB were protected by the limitation of liability statute, they may only have been liable for approximately seven thousand dollars ($7,000.00). Therefore, even if their percentage of liability were more than this amount, they could not be required to pay more. In light of this possibility a settlement of twenty-five thousand dollars ($25,-000.00) could be viewed as extremely generous.

Finally, this Court recognizes that "a court should be wary of granting summary judgment when good faith is in question." *Hotel & Rest. Emp. & Bartenders, etc. v. Rollison*, 615 F.2d 788, 793 (9th Cir.1980). However, the very concept of encouraging settlement would be impaired if multiple trials by jury were always deemed necessary in order to determine whether a settlement was in 'good faith.' *In re MGM Grand Hotel Fire Litigation*, 570 F.Supp. 913, 927 (D.Nev.1983).

Based on a thorough examination of all of the facts, circumstances, motions and authorities presented in this case, the Court finds that Third–Party Plaintiffs are not entitled to indemnity as a matter of law. The Court further finds that Third–Party Plaintiffs have not presented "genuine" issues of "material" fact sufficient to preclude summary judgment on the issue of "good faith." If a "good faith" settlement was made, Third–Party Defendants are protected from further liability and are not subject to contribution whether under admiralty or Nevada state law. Third–Party Plaintiffs have not requested a hearing in this matter, therefore no hearing is required as per Local Rule 140–9.

IT IS THEREFORE ORDERED that Third–Party Defendants CALLVILLE and DEL WEBB's Motion for Summary Judgment is granted.